David Ross DELAP, Sr., Petitioner–Appellant,

v.

Richard L. DUGGER, Secretary, Department of Corrections, State of Florida, Respondent–Appellee.

Nos. 88–3393, 88–3404.

United States Court of Appeals, Eleventh Circuit.

Nov. 20, 1989.

Richard G. Bartmon, Joan Fowler, Asst. Attys. Gen., West Palm Beach, Fla., for Dugger.

Janet Munn, Steel Hector & Davis, Gerry S. Gibson, Greg Anderson, Miami, Fla., for Delap.

Before FAY, VANCE and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

Petitioner David Ross Delap, Sr. and Respondent Richard L. Dugger both appeal the district court's conditional grant of Delap's petition for a writ of habeas corpus. For the reasons set forth below, we affirm.

## I. BACKGROUND

### A. *Facts*

On June 30, 1975, Paula Etheridge was seen washing clothes at a laundromat in Okeechobee, Florida, at approximately 4:00 p.m. She was wearing a red top, light colored shorts, and red tennis shoes. Paula Etheridge was reported missing to the Sheriff's office the next day.

Between 5:30 and 6:00 p.m. on June 30, Ava Leonard and her daughter watched a car travel down Highway 70 and swerve into their yard. The front passenger door was open and the Leonards saw a man holding a woman wearing a red top and tan or brown shorts by the neck. The woman was screaming for help.

Lois Huff was driving eastbound, behind a truck, on Highway 70 with her three daughters. Between 5:15 and 6:30 p.m. on June 30, Mrs. Huff noticed a struggle in the car behind her vehicle. The man was holding the woman's head in the crook of his arm. Because she feared that the car behind her was going to hit her car, Mrs. Huff pulled off the road. The other car hit a bridge and kept going. Mrs. Huff attempted to contact the Sheriff's office, but no one responded, so she attempted to follow the automobile she had seen. She was unable to catch the car.

Willy Kelly, the truck driver, recalled seeing what he thought was a 1975 Dodge or Plymouth traveling around fifty miles per hour. The passenger side door was open, and a woman's motionless arm was hanging out of it. Kelly slowed down to see what was happening. Before he got a chance to see into the car, however, it turned onto a side road and stopped. Both the driver's and passenger's doors came open, and Kelly saw a man walk around to the passenger's side of the car. Kelly drove on to West Palm Beach.

Jo Randolph was a classmate of David Ross Delap's from Okeechobee Community College. Randolph saw Delap at approximately 5:00 p.m. on June 30, 1975, before their speech class started. Delap did not attend the first part of class, but he returned to class later with what appeared to be blood on his shirt. Randolph overheard Delap state that his child had been injured in an accident and that he had to leave class to take the child to the hospital. She heard him say that the blood on his shirt came from his child's cut.

After the Sheriff's office received the missing person's report on Paula Etheridge, investigators checked into the report of the man and woman struggling in a car. Lois Huff pointed out Delap's car to a deputy, and the car was placed under surveillance while investigators checked Delap's background and obtained additional information.

On July 7, 1975, Sheriff's Deputy Bill Arnold and Chief Investigator for the State's Attorney Lem Brumley confronted Delap with the fact that Delap matched the description of the man seen struggling with a woman and that Delap's car matched the car described by witnesses. Delap agreed to go to the Sheriff's office for questioning. While Arnold and Brumley were questioning him, Delap's home was being searched pursuant to a warrant by Agent Buchannan. Buchannan questioned Delap's wife and determined that none of the Delap children had been injured or cut recently. Buchannan informed Brumley of this, and Brumley then called in Police Chief Statts to help with the interrogation of Delap. The officers told Delap that his explanation of the blood on his shirt and his child's injury was a lie, since the hospital where Delap claimed to have taken his child was too far away for him to drive and return to the college in such a short time and since his wife stated that none of his children had been injured. Delap then gave a statement and took the officers to the purse and body of the vic-

tim, who was later identified as Paula Etheridge.

### B. *Procedural History*

An Okeechobee County grand jury indicted David Ross Delap on August 25, 1975, for the premeditated first degree murder of Paula Etheridge. Delap's attorneys filed various pretrial motions, including a motion to suppress Delap's confession and a motion to suppress all evidence obtained during the search of Delap's home. The motion to suppress the fruits of the search of Delap's home was granted; the motion to suppress Delap's confession was denied.

Delap was convicted of first degree murder in the Nineteenth Judicial Circuit of Florida on February 27, 1976 and sentenced to death. The Supreme Court of Florida reversed Delap's conviction and remanded the case for a new trial because of the state's inability to provide a complete transcript of the trial for appellate review. *Delap v. State*, 350 So.2d 462 (Fla.1977).

Delap was tried again, this time in Orange County, Florida, in the Ninth Judicial Circuit, because of extensive publicity. Delap's counsel renewed all previous pretrial motions to suppress. Delap was again found guilty of first degree murder and sentenced to death.

Delap raised twelve grounds for relief in his direct appeal to the Supreme Court of Florida. The court rejected all of Delap's claims except for his challenge to the finding that the felony was committed for pecuniary gain. Because five other statutory aggravating factors existed, however, the court affirmed Delap's death sentence. *Delap v. State*, 440 So.2d 1242 (Fla.1983). Delap's petition for certiorari to the United States Supreme Court was denied on June 25, 1984. *Delap v. Florida*, 467 U.S. 1264, 104 S.Ct. 3559, 82 L.Ed.2d 860 (1984).

On December 19, 1985, Delap filed a motion for post-conviction relief in the trial court under Florida Rule of Criminal Procedure 3.850, which was denied without an

evidentiary hearing. The Supreme Court of Florida affirmed the decision. *Delap v. State*, 505 So.2d 1321 (Fla.1987).

Delap's execution was scheduled for October 15, 1987. On September 24, 1987, Delap filed a petition for writ of habeas corpus and an application for stay of execution with the Supreme Court of Florida. The petition and application were denied on October 8, 1987. *Delap v. Dugger*, 513 So.2d 659 (Fla.1987).

Delap filed a second 3.850 motion for post-conviction relief in the Florida trial court on October 9, 1987. The court denied relief on October 12, 1987. Delap again appealed to the Supreme Court of Florida, which affirmed on October 13, 1987. *Delap v. State*, 513 So.2d 1050 (Fla.1987).

On October 12, 1987, Delap then sought a writ of habeas corpus before Judge Patricia Fawsett in the United States District Court for the Middle District of Florida. On October 13, 1987, the court granted a conditional writ of habeas corpus, Delap's motion for a certificate of probable cause, and his motion for a stay of execution. *Delap v. Dugger*, No. 87–907–CIV–ORL–19 (M.D.Fla. October 13, 1987) ("District Court Order"). The state filed a motion for relief from judgment and/or motion to amend, alter, or reconsider judgment, and/or motion for new trial on October 22, 1987. On February 24, 1988, Delap filed a motion for reconsideration and rehearing of the *Hitchcock* issue raised in his petition. On April 21, 1988, the district court entered an amended order, incorporating by reference its earlier order, granting Delap's conditional writ of habeas corpus. *Delap v. Dugger*, No. 87–907–CIV–ORL–19 (M.D. Fla. April 21, 1988) ("District Court Amended Order"). The court ordered the state to provide Delap with a new sentencing proceeding or to commute his sentence of death to life imprisonment.

Delap raises several grounds on appeal,[1] arguing that:

---

1. In his second 3.850 motion for post-conviction relief in state court and in his federal habeas petition to the district court, Delap raised a claim based on *Caldwell v. Mississippi*, 472 U.S.

320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). The district court found that Delap's *Caldwell* claim was procedurally barred, and that he had not demonstrated cause under *Wainwright v. Sykes*,

1) the state denied his Fifth Amendment right to remain silent and Sixth Amendment right to counsel as recognized in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966);

2) his confession was coerced;

3) he was denied his Sixth Amendment right to effective assistance of counsel when his attorneys failed to cross-examine changed testimony of two key prosecution witnesses;

4) the state suppressed impeachment evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972);

5) newly discovered evidence demonstrates that the medical evidence used to convict him had no basis in fact;

6) the trial judge sentenced him to death after an improper *ex parte* visit to death row; and

7) the Florida courts applied the death penalty in an arbitrary, capricious, and unpredictable manner in violation of the Eighth and Fourteenth Amendments by:

a) applying an unconstitutionally vague construction of the "great risk of death to many persons" aggravating factor;[2]

b) improperly relying on a "pecuniary gain" aggravating factor;[3] and

c) allowing consideration of prior charges which did not result in convictions.[4]

The state of Florida cross-appeals on two grounds:

1) that the district court erred in finding that a violation of *Hitchcock v. Dugger,*

481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), occurred at Delap's trial; and

2) that the district court erred in finding that the trial court improperly found as an aggravating factor that the crime occurred during the commission of a robbery, kidnapping, or rape.

We address these contentions in turn below.

## II. *MIRANDA* ISSUES

### A. *Right to Terminate Interrogation*

Delap contends that before the police obtained his confession, Delap invoked his fifth amendment right to end further questioning. He claims that the state's failure to honor this request violated *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its progeny.

The Supreme Court held in *Miranda* that when law enforcement officials conduct custodial interrogations, they must inform the suspect of his or her constitutional right to remain silent, of the fact that anything the suspect says may be used against him or her in court, that the suspect has the right to an attorney, and that if the suspect cannot pay for an attorney the state will provide one for him or her. 384 U.S. at 479, 86 S.Ct. at 1630. The Court also made clear that officials must scrupulously honor the suspect's right to end questioning: "[i]f the individual indicates *in any manner, at any time prior to or during questioning,* that he wishes to remain silent, the interrogation must cease." 384 U.S. at 473–74, 86 S.Ct. at 1627 (emphasis added).

The Court defined with greater clarity the scope of a suspect's right to cut off questioning in *Michigan v. Mosley,* 423

433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). District Court Order 59. Delap devoted only a footnote in his brief on appeal to his *Caldwell* claim. We, like the district court, find Delap's *Caldwell* claim to be procedurally barred.

**2.** Although Delap makes a strong argument that this case involves an improper application of this aggravating factor, we decline to address the issue because of our resolution of the *Hitchcock* claim. *See infra* Part VIII.

**3.** Because a new sentencing proceeding is required due to our resolution of Delap's *Hitchcock* claim, *see infra* Part VIII, we need not address this claim. We can safely assume that a resentencing court will comply with the Florida Supreme Court's determination that the facts of this case could not support a finding that Delap acted for pecuniary gain. *See Delap v. State,* 440 So.2d at 1257.

**4.** Because of our resolution of Delap's *Hitchcock* claim, *see infra* Part VIII, we also decline to address this issue.

U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). In *Mosley*, the Court stated that

[t]hrough the exercise of his option to terminate questioning [the suspect] can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation. The requirement that law enforcement authorities must respect a person's exercise of that option counteracts the coercive pressures of the custodial setting. We therefore conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his "right to cut off questioning" was "scrupulously honored."

423 U.S. at 103–04, 96 S.Ct. at 326. The Court held that statements taken after a suspect indicates his or her desire to remain silent are inadmissible unless the right to cut off questioning was "scrupulously honored." Under the facts of *Mosley*, the Court held that the suspect's rights had been honored because the police immediately ceased the interrogation and resumed questioning only after a significant period of time had passed, the suspect was readvised of his rights, and the second interrogation focused on matters that had not been discussed earlier. 423 U.S. at 105–06, 96 S.Ct. at 327. The suspect's statement therefore was held admissible.

■ It is well settled that even an equivocal invocation by the suspect of the right to cut off questioning requires that the interrogation cease, and further questions are limited to clarifying whether the suspect in fact desires to terminate the interrogation. *Owen v. State of Alabama*,

849 F.2d 536, 539 (11th Cir.1988); *Christopher v. State of Florida*, 824 F.2d 836, 841–42 (11th Cir.1987), *cert. denied*, 484 U.S. 1077, 108 S.Ct. 1057, 98 L.Ed.2d 1019 (1988). Police clarification does not include "questions that, though clothed in the guise of 'clarification,' are designed to, or operate to, delay, confuse or burden the suspect in his assertion of his rights." *Christopher*, 824 F.2d at 842 (footnote omitted). Such questions are impermissible because they "serve to keep the suspect talking, not to uphold his right to remain silent." *Id.* A suspect's equivocal request to cut off questioning "serves as a complete bar to any questioning related to the subject of the initial interrogation for a 'significant period of time' after the request." *Id.* at 844, *quoting United States v. Hernandez*, 574 F.2d 1362, 1369 (5th Cir.1978). During this time, only if the suspect both initiates further conversation and waives the previously asserted right to silence may further statements be used against the suspect. *Id.* at 844; *Thompson v. Wainwright*, 601 F.2d 768, 771–72 (5th Cir.1979).[5]

The facts surrounding Delap's *Miranda* claim are as follows. Chief Investigator Lem Brumley and Sheriff's Deputy Bill Arnold approached Delap around 9:00 p.m. on July 7, 1975, at Okeechobee Community College. After a brief discussion, Delap agreed to accompany the investigators to the sheriff's office. According to Brumley and Arnold, Delap was read his rights and acknowledged that he understood them, and the state trial judge found that Delap was in fact read his *Miranda* rights.[6] (A16–2801–03).[7] At some point during the

---

**5.** This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

**6.** Delap testified, however, that he was not read his *Miranda* rights before he made his confession. (A16–2686, 2691, 2702, 2705). The state trial judge's finding to the contrary is entitled to the presumption of correctness to be accorded state court findings of fact in federal habeas corpus cases. 28 U.S.C. § 2254(d) (1977); *Agee v. White*, 809 F.2d 1487, 1493 (11th Cir.1987). In any event, in this court Delap does not deny that he was advised of his *Miranda* rights.

Although this court must make an independent determination of whether Delap's statement was an equivocal request to cut off questioning, and of whether the subsequent questioning was appropriate clarification—i.e., whether Delap's right to cut off questioning was scrupulously honored, *see Lightborne v. Dugger*, 829 F.2d 1012, 1018–19 (11th Cir.1987), subsidiary facts, such as whether or not the officers gave the advice of rights, are entitled to the presumption of correctness.

**7.** References to the district court record, except the appendix, are cited as "R (volume #)—(document #)—(page #)." References to

interrogation, Delap stated that the public defender's office was representing him in an unrelated misdemeanor charge.

At a hearing in state court on Delap's motion to suppress his confession, Chief Investigator Lem Brumley testified as follows:

Q. Did he ever ask to leave?

A. He said on a couple of occasions there *he wanted to know how much longer that he would be detained or would be there answering the questions,* and I told him I didn't know. I think the first time was about the time we were—I believe we were searching his car at the rear of the jail. *And he said that his wife was home alone with the children, and that she was expecting him home. And that he wanted to go.* I says well I don't know exactly how much longer we'll be but I'd like to get this matter cleared up. And he said okay, so, about—

Q. Well, did he say he didn't want to stay? That he wanted to go home?

A. No.

Q. Did you ever at anytime stand in his way to prohibit him from leaving?

A. No,—I didn't.

(A16–2741) (emphasis added). Bill Arnold, a Sheriff's Deputy present at Delap's interrogation, testified as follows:

Q. During the course of your interrogation did you ever tell Mr. Delap that he was free to get up and go home if he wanted to?

A. No sir, I didn't.

Q. Did anyone else in your presence?

A. No sir.

(A16–2779). Delap himself testified at the suppression hearing as follows:

Q. Did they [Brumley and Arnold] in fact at any time prior to your making the alleged statements implicating yourself, did they tell you that you were free to leave if you so desire?

A. They did.

Q. Did you in fact attempt to leave?

A. Approximately three times.

Q. And what was stated at that time?

A. They asked me to please stay seated. They said they had a few more questions they wanted to ask, and one of them got up and left and said he was going to be back in a little while, and he wanted to ask me another question or two. And he wanted me to stay there until they asked questions, and then they said I was free to go.

(A16–2686, 2691). Delap testified further as follows:

Q. Now, Mr. Delap, from the time that you arrived from the sheriff's office until the time that you implicated yourself—I assume that when you did make a statement implicating yourself, that you were then placed under arrest, is that correct?

A. (no audible response)

Q. You were formally told at that time you were under arrest?

A. Yes sir, after I made the statement.

Q. And prior to that time did you feel that you could have got up and left at any time if you desired?

A. They had me believing that I could leave anytime I wanted to because they said I was not under arrest. They were just a few routine questions. In fact, they did say I could leave anytime I wanted to. They just wanted to ask me a few questions.

Q. And you attempted to leave on three occasions?

A. I attempted to, but they—

Q. What do you feel they would have done if you had got up and tried to walk out?

A. Well, that's hard to tell that. When I did leave the room, they had deputies all the way around the—

Q. Did you feel at that time you could have gotten up and walked out of that sheriff's office.

A. I felt that I should have been able to. They told me I could.

the twenty-volume appendix, comprising the record of the state court proceedings, are cited "A (volume #)—(page #). References to the one volume of the second supplemental record are cited "2SR1—(document #)—(page #).

Q. Did you think you could have if you wanted to get up and walk out right then?

A. I don't believe I would have made it out.

(A16–2693–94). Delap's testimony on cross-examination is more explicit:

Q. ... Now, did you ever try to get up and leave and walk out the door?

A. I think I stated three times.

Q. What did they do to you? Did they push you back down?

A. They didn't touch me, no. But they made it known that I was to stay there.

Q. Well, did you say I don't want to stay?

A. Yes, I did.

Q. Did you say I want to leave?

A. Yes, I did.

Q. And what did they say?

A. They said they had a few more questions and I was to stay there until I answered them.

Q. Who told you that?

A. Lem Brumley told me.

(A16–2701; *see* A16–2713–14). Later in the interrogation, Delap made a statement incriminating himself and led Brumley and Arnold to where the victim's purse was buried, and finally to the body of Paula Etheridge.

Delap contends that his statements constituted an equivocal request to terminate questioning, thus invoking his Fifth Amendment right. He further contends that Brumley's response was not limited to permissible clarification of his equivocal request, but rather constituted continuing interrogation, and that a constitutional violation thus occurred.

We must first decide whether there was an equivocal invocation of Delap's Fifth Amendment right to terminate questioning, and only if we conclude that there was will we need to address the question of whether Brumley's responses were permissible clarification or continued interrogation.

In deciding whether Delap's statements were an equivocal invocation of his right to cut off questioning, we examine the very similar circumstances in two previous cases. In *Martin v. Wainwright*, 770 F.2d 918 (11th Cir.1985), *modified on other grounds*, 781 F.2d 185 (11th Cir.), *cert. denied*, 481 U.S. 1033, 107 S.Ct. 1965, 95 L.Ed.2d 536 (1986), this court held that the suspect's right to cut off questioning was not "scrupulously honored" during his interrogation. One of the detectives present during Martin's interrogation testified as follows:

Q. Wasn't there a point in the interview before Mr. Scarola arrived where Mr. Martin expressed a desire to stop talking and to take up the conversation again the next day?

A. I don't recall that. It is possible. It seem [sic] to me like *he did say something about waiting until the next day* and I don'know [sic] how it was continued.

Q. Well, did Anderson then just keep questioning him after that, isn't that how it was continued?

A. It is possible.

The other detective present at Martin's interrogation stated:

Q. Now, at some point during the interrogation, didn't Nollie Martin say to you he did not want to make a statement?

A. Not that I recall, no, sir.

Q. Did he say to you, "I don't want to make a statement today, I'll talk to you tomorrow?"

A. *He said something about, "Can't we wait until tomorrow?"*

Q. *Okay. In response to that, you just kept questioning him, didn't you?*

A. *Yes, sir. I said, "Let's go on."*

770 F.2d at 922–23 (emphasis added). The court held that Martin's request, "Can't we wait until tomorrow," was an equivocal invocation of his right to cut off questioning, and that the detectives' continued questioning of Martin was improper under *Miranda.* 770 F.2d at 923.

On the other hand, in *Moore v. Dugger,* 856 F.2d 129 (11th Cir.1988), this court held that the defendant's statements did not constitute an equivocal invocation of the right to terminate questioning. In *Moore,* the defendant had stated at the beginning

of a taped confession: "When will you all let me go home?" 856 F.2d at 132, 134 n. 1. In rejecting defendant's argument that the statement was an attempt to exercise his *Miranda* right to cut off questioning, this court stated:

We do not accept petitioner's interpretation of this statement. As noted previously, the prospect of going home would naturally be of great interest to any suspect undergoing interrogation. We are not persuaded that this statement evidences a refusal to talk further. This request for information about when, in the future, petitioner would be allowed to leave differs markedly from the statements in *Christopher* which we held were attempts to cut off questioning, but which were not honored by police.[2] We conclude that petitioner's statement was not an invocation of his right to remain silent.

---

[2] "Then I got nothing else to say. If you are accusing me of murder, then take me down there." "I got nothing else to say." "What's the need of me saying anything then?" *Christopher*, 824 F.2d at 840.

856 F.2d at 134.

■ After careful consideration of the record in this case in light of *Martin* and *Moore*, we conclude that the instant case is controlled by *Moore* rather than *Martin*. In *Martin*, the defendant's statements were made in the context of whether or not the defendant had "expressed a desire to stop talking and to take up the conversation again the next day." The defendant's question—"Can't we wait until tomorrow?" —was an indication that defendant wished to stop talking and wait until tomorrow, thus constituting an equivocal invocation of his right to cut off questioning.

By contrast, the context in the instant case was not whether or not Delap wished to terminate or delay questioning, but rather whether or not Delap felt like he was free to go home. The nature of Delap's questions related to how long it would be before Delap could go home.[8]

**8.** The district court also found that the nature of Delap's questions were "how much longer the

Thus, Delap's questions in this case were virtually identical to the question in *Moore*, "When will you all let me go home?" This court in *Moore* held that such a statement did not constitute an equivocal invocation of the right to cut off questioning. Accordingly, Delap's questions in this case do not constitute an equivocal invocation of his Fifth Amendment right to terminate questioning.

Since there was no invocation of Delap's Fifth Amendment right to silence, we affirm the district court on this issue without addressing whether or not Brumley's responses were permissible clarification.

### B. *Right to Counsel*

■ Delap contends that questioning by the police continued after he requested an attorney in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The Court in *Miranda* established a firm rule: "If the individual [subjected to custodial interrogation] states that he wants an attorney, the interrogation must cease until an attorney is present." 384 U.S. at 474, 86 S.Ct. at 1628. *See Arizona v. Roberson*, 486 U.S. 675, ——, 108 S.Ct. 2093, 2098–99, 100 L.Ed.2d 704 (1988). Courts are required to "give a broad, rather than a narrow interpretation to a defendant's request for counsel," *Michigan v. Jackson*, 475 U.S. 625, 633, 106 S.Ct. 1404, 1409, 89 L.Ed.2d 631 (1986), and a court "must 'presume' that the defendant requests a lawyer's services at every critical stage of prosecution." *Owen v. State of Alabama*, 849 F.2d 536, 538–39 (11th Cir.1988), *quoting Jackson*, 475 U.S. at 633, 106 S.Ct. at 1409. Even an ambiguous or equivocal invocation of the right-to-counsel triggers the prophylactic rule, and further questioning is limited to clarification of the equivocal request. *Owen*, 849 F.2d at 538–39; *Martin v. Wainwright*, 770 F.2d 918 (11th Cir.1985), *modified on other grounds*, 781 F.2d 185 (11th Cir.), *cert. denied*, 481 U.S. 1033, 107 S.Ct. 1965, 95

interview would last." District Court Order, at 26.

L.Ed.2d 536 (1986).[9] However, on these facts we conclude that the mere indication that Delap was represented by counsel in an unrelated matter does not constitute even an equivocal request for counsel. *See Fare v. Michael C.,* 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979) (juvenile's request to speak to his probation officer during custodial interrogation not an invocation of his right to counsel); *Palmes v. Wainwright,* 725 F.2d 1511, 1516–17 (11th Cir.) (refusal to sign waiver of rights form not construed as invocation of right to counsel), *cert. denied,* 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984).

Investigator Brumley stated that Delap told Brumley that he was represented by the public defender's office on an unrelated misdemeanor charge:

Q. And you knew that Mr. Delap was awaiting trial on a misdemeanor charge here in Okeechobee County. And that we had been appointed previously to represent him.

A. Only after the conversation started.

Q. You didn't know that there was a charge pending against him? You hadn't discussed that during all the surveillance time?

A. Yes. That he had been arrested. But I didn't know in the case of a misdemeanor, I didn't know that you had been appointed. But he told me that you had during the course of the conversation.

Q. You make any effort whatsoever at that time to get in touch with us and advise us that you were interrogating our client?

A. Well, he was your client for the misdemeanor and not the felony.

Q. Well, is he any less indigent at that time or this offense and for a misdemeanor?

A. That's for the court to determine.

Q. You knew that he was being represented by the Public Defender in connection with a criminal charge that was pending in Okeechobee County.

A. Yes, prior to the confession he made, yes.

(A16–2762–63). Brumley did not ask Delap whether he wanted the attorney representing him on the other charge present before continuing the interrogation. (A16–2762). The public defender's office was not contacted until nearly six hours after Delap first told Brumley that he was represented by counsel, while Delap was in the process of being booked. (A16–2763).

Delap argues that this was at least an equivocal request for counsel, and that all custodial interrogation should have ceased so that the investigators could clarify his "request." *Owen,* 849 F.2d at 539. The district court rejected this contention, and we agree with its conclusion. District Court Order 25.[10]

Delap again relies on *Martin v. Wainwright,* 770 F.2d 918 (11th Cir.1985), *modified on other grounds,* 781 F.2d 185 (11th Cir.), *cert. denied,* 481 U.S. 1033, 107 S.Ct. 1965, 95 L.Ed.2d 536 (1986). In a footnote in that case, this court stated that it is unnecessary for suspects "to use talismanic words in order to invoke their *Miranda* rights," and noted that such statements as "Can I have a lawyer?" or "Can't I have a

---

**9.** The law relating to requests for counsel and restrictions on further questioning parallels the law relating to requests invoking the right to remain silent. *See supra* Part II.A.; Martin, *770 F.2d at 924.*

**10.** The district court initially found that "informing the interrogators about some collateral representation clearly does not constitute a request for an attorney." District Court Order 25. Later in its order, the court stated that Delap "did not invoke his right to counsel in an unambiguous, unequivocal manner." *Id.* at 26. Because we agree with the district court that Delap did not even equivocally request an attorney, we affirm. We note, however, our cases do not

require a suspect to invoke his right to counsel in "an unambiguous, unequivocal manner." In *Owen v. State of Alabama,* 849 F.2d 536, 539 (11th Cir.1988) (emphasis added and in original) (citations omitted), this court stated that "[w]hen a defendant makes an *equivocal request* for an attorney during a custodial interrogation, 'the scope of that interrogation is immediately narrowed to one subject and one only. *Further questioning thereafter must be limited to clarifying that request* until it *is* clarified.' ... Any statement taken by the state after the *equivocal request for counsel* is made, but before it is clarified as an effective waiver of counsel, violates *Miranda.*" *See also Thompson v. Wainwright,* 601 F.2d 768, 771–72 (5th Cir.1979).

lawyer?" would be equivocal invocations of the right to counsel. 770 F.2d at 924 n. 6. We reaffirm the *Martin* court's observation; however, we conclude that Delap's statement, considered in its context, did not constitute even an equivocal request for an attorney.

Delap never requested a lawyer, even tentatively—he merely informed the interrogating officers that he had a lawyer for an unrelated charge. The record indicates that Delap did not intend his discussion of his representation by counsel in the misdemeanor proceeding to be a request for his attorney. During cross-examination at a December 12, 1975 hearing on Delap's motion to suppress his confession, Delap himself testified as follows:

Q. Did you ever at any time ask to call a lawyer?

A. *A lawyer didn't enter my mind.*

Q. Never thought about it? You knew that you were represented by an attorney on a case that was coming up. You knew that, didn't you?

A. Not at that time I didn't. It never entered my mind.

Q. Why? You had a lawyer.

A. I had a lawyer, yes. But at that time I was—my mind was in a turmoil. I was trying to counteract their questioning and—

Q. You weren't denied the right to call a lawyer.

A. They didn't offer it to me.

Q. Did you ask to call a lawyer?

A. It didn't enter my mind, no.

(A16–2702–03) (emphasis added).

Delap argues that the use of "post-request" statements to clarify his initial statement violates *Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). *See also Owen v. State of Alabama,* 849 F.2d 536 (11th Cir.1988). Delap's reliance on *Smith* is misplaced. *Smith* held that an accused's post-request responses to further interrogation may not be used to cast doubt upon his initial re-

quest for counsel. The reason for the Supreme Court's bright-line rule prohibiting further questioning is to avoid deliberate or unintentional overreaching by the interrogating officers that might wear down an accused and persuade him to incriminate himself notwithstanding his earlier request for counsel. The instant case does not involve the use of an accused's post-request responses to further interrogation by the officers. Rather, this case involves consideration of Delap's own testimony at the suppression hearing as to precisely what he said in his initial statement, what he meant, how it might have been perceived, and the context in which the initial statement itself was made. In making this contextual assessment, we do not draw upon any subsequent responses by Delap to further interrogation by the officers. Thus, the rule of *Smith v. Illinois* is inapplicable; this case simply does not implicate concerns that continued interrogation, following an initial request for counsel, might wear down an accused.

Because we hold that Delap did not even equivocally invoke his right to counsel, the duty to limit further questioning to clarification was never triggered. Therefore, we affirm the district court on this issue.

### III. VOLUNTARINESS OF THE CONFESSION

Delap argues that his confession was involuntary. He claims that the police used improper "good cop/bad cop" interrogation techniques that improperly exploited his unstable mental condition, that he was induced to confess by promises of psychiatric treatment, and that he was threatened and repeatedly told by the police that they knew he was guilty and that he had better confess.[11]

After a full evidentiary hearing, the state trial court made findings of fact that no threats were made and that there were no promises of psychiatric help to induce

---

**11.** In his petition for writ of habeas corpus to the district court, Delap also argued that the confession was the fruit of an illegal search of his home. The district court rejected this claim,

Delap has not pressed it on appeal, and therefore we deem it abandoned. *See Ballard v. Johnson,* 821 F.2d 568, 569 n. 1 (11th Cir.1987).

the confession. Although the issue of voluntariness is a matter for independent federal determination, subsidiary factual questions, "such as ... whether in fact the police engaged in ... intimidation tactics" are entitled to the presumption of correctness provided for in 28 U.S.C. § 2254(d). *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 453, 88 L.Ed.2d 405 (1985). In this case, the presumption applies to the finding that no threats were made and also to the finding that no promises were made. We have carefully reviewed the record and conclude that there is ample support in the record for these findings of fact. In addition, we have carefully reviewed the record to discharge our duty to determine independently voluntariness of the confession based upon the totality of the circumstances. *See Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). We conclude that there were no improper interrogation techniques, that there was no exploitation of Delap's mental condition, and that Delap's confession was voluntary. Because Delap's challenge to his confession is so clearly without merit, it does not warrant further discussion.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

■ Delap contends that his trial counsel rendered constitutionally defective assistance by failing to cross-examine adequately two key state witnesses whose testimony allegedly changed between Delap's first and second trials.[12]

Dr. Hampton Schofield, the Okeechobee County Medical Examiner, testified at Delap's first trial as to the cause of death of Paula Etheridge. At the first trial, Dr. Schofield stated that he was unable to determine from the autopsy whether a skull fracture or strangulation was the most probable cause of death. When asked whether he could precisely ascertain the cause of death, Dr. Schofield replied that he "would rather not suggest that one [cause] was more prominent than the other." (A17–2965). Dr. Schofield testified that the only injury he had located on the victim's body was a small fracture to the skull (A17–2957, 2968), and that this injury was consistent with a fall from a moving vehicle onto pavement. (A17–2964). Dr. Schofield also testified that he had noticed a collection of blood in the form of two parallel marks on the side of the victim's neck, which suggested strangulation as a probable cause of death. He testified that "I have considered the probable cause of death was by strangulation, but I have no findings to corroborate or sustain it." (A17–2958, 2960) (R1–1–11, 12).

At Delap's second trial, Dr. Schofield testified that, based on the same autopsy, he could "present a logical cause of death." (A2–349). While he stated that there was "a combination of happenings in this instance," (A2–349), Dr. Schofield stated that his findings were consistent with strangulation and that "this person must have been considered as having been strangled." (A2–350–51). Furthermore, Dr. Schofield asserted, strangulation "presents itself time and time again as being the most prominent cause of death." (A2–384) (R1–1–12–13). Dr. Schofield admitted, however, that he could not be certain that the cause of death was strangulation, and, consistent with his testimony at the first trial, he still believed that there were two possible causes of death. (A2–372–74, 355).

Delap also contends the testimony of another key prosecution witness, State Attorney Chief Investigator Lem Brumley, materially changed at the second trial. In pre-

---

12. In his petition to the district court, Delap also argued that he was denied his Sixth Amendment right to confront and cross-examine witnesses, that Lem Brumley should not have been exempted from the rule of sequestration of witnesses, that the decision not to have Delap testify at his second trial was unreasonable, and that Delap's counsel was constitutionally ineffective by failing to request a hearing based on *Richardson v. State*, 246 So.2d 771 (Fla.1971), mod-

ified by *Cuciak v. State*, 410 So.2d 916 (Fla. 1982). Delap does not press these arguments on appeal, and so they are deemed abandoned. *Ballard v. Johnson*, 821 F.2d 568, 569 n. 1 (11th Cir.1987). Delap's ineffective assistance arguments on appeal focus only on his second trial counsel's alleged failure to impeach adequately the testimony of two key prosecution witnesses. We address these arguments below.

trial statements and at Delap's first trial, Brumley testified that Delap confessed to killing Paula Etheridge by striking her on the head with an object Delap picked up from the side of the road. (A17–2990). Brumley also testified that Delap confessed that the victim struggled while in his car, and to subdue her Delap held onto her with his right hand around her neck. (A17–2988).

At the second trial, Brumley testified that Delap told Brumley that Delap grabbed the victim around the neck as they struggled in Delap's car. (A4–740). Brumley also testified that Delap confessed to beating *and* strangling the victim and choking her to death. (A4–741, 794–97) (R1–1–17–18). Defense counsel did not amplify this particular alleged inconsistency at the second trial, but Brumley's recollection of Delap's confession was impeached, and Brumley was forced to admit that his notes of the confession were sketchy. (A5–866, 872).

The testimony of Dr. Schofield and Brumley provided the principal evidence of premeditation, which was the state's only theory of conviction in Delap's second trial.[13] Delap argues that despite his trial counsel's awareness of the impact that this testimony might have had on the jury, counsel did not impeach the witnesses with their earlier statements, nor did counsel present any expert medical testimony to attempt to demonstrate the lack of medical evidence to support Schofield's conclusion that strangulation was the cause of death. Delap argues that this lack of witnesses at trial, along with counsel's failure to "offer any coherent line of defense to the jury," constituted ineffective assistance of counsel in violation of the Sixth Amendment.

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), governs this court's examination of ineffective assistance of counsel claims. In *Strick-*

*land*, the Court held that in order for an ineffective assistance claim to succeed, "the defendant must show that counsel's performance was deficient," i.e. "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 697, 104 S.Ct. at 2064. The reviewing court must determine whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance" demanded of attorneys in criminal cases. *Id.* at 690, 104 S.Ct. at 2066.

*Strickland* also requires the deficient performance to have prejudiced the defense. *Id.* at 687, 104 S.Ct. at 2064. To establish prejudice, a defendant must show a reasonable probability that the result of the proceeding would have been different but for counsel's unprofessional errors. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id.* at 694, 104 S.Ct. at 2068.

With regard to the first part of the *Strickland* test, a reviewing court must strongly presume that counsel's conduct falls within the wide range of reasonably professional assistance. *Id.* at 689–90, 104 S.Ct. at 2065–66. "The appropriate legal standard is not error-free representation, but 'reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *Foster v. Dugger*, 823 F.2d 402, 405 (11th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 2915, 101 L.Ed.2d 946 (1988), *quoting Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066. "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

The district court, after offering Delap an evidentiary hearing on this issue,[14] concluded both that the performance of counsel was within the wide range of professional competence and that Delap was not prejudiced by his attorney's alleged infirmi-

---

13. In Delap's first trial, the state pursued both felony murder and premeditation theories of conviction, but the trial court found insufficient evidence to support a conviction for felony murder. *See infra* Part IX.

14. Neither side presented testimony at this evidentiary hearing before the district court, but Delap did proffer evidence which the district court found was already included in the record. District Court Order 10, 11.

ties. Our review of the record indicates that the district court was correct in holding that Delap's trial counsel was not ineffective.

Both the district court and the Florida Supreme Court concluded that Dr. Schofield's and Brumley's testimony at the two trials was substantially consistent. District Court Order 11; *Delap v. State*, 505 So.2d at 1322. We agree. At both trials, Dr. Schofield testified that there were two possible causes of death. The major difference between Dr. Schofield's testimony at the first and second trials is that in Delap's first trial, Dr. Schofield testified that he would rather not suggest that either strangulation or skull fracture was the more likely cause of death, while at the second trial, he stated that death was likely caused by strangulation, although he could not be certain. Delap also argues that Brumley changed his testimony to conform to Schofield's theory of death by strangulation. At the second trial, Brumley testified that Delap confessed to beating and choking Paula Etheridge, while at the first trial Brumley testified that Delap stated that he grabbed the victim by the neck and then beat her to death. These alleged inconsistencies are minimal.

Furthermore, Delap's counsel vigorously cross-examined both Dr. Schofield and Brumley at the second trial.[15] *See Griffin v. Wainwright*, 760 F.2d 1505, 1512 (11th Cir.1985), *vacated on other grounds*, 476 U.S. 1112, 106 S.Ct. 1964, 90 L.Ed.2d 650 (1986). Whether counsel would have been more effective had Dr. Schofield's alleged inconsistencies in testimony been brought out at the second trial requires an inappropriate use of hindsight to assess the effectiveness of counsel. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. "That counsel for a criminal defendant has not pursued every conceivable line of inquiry in a case does not constitute ineffective assistance of counsel." *Ford v. Strickland*, 696 F.2d 804, 820 (11th Cir.), *cert. denied*, 464 U.S. 865, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983).

The Sixth Amendment requires effective assistance of counsel in order to ensure that the adversarial process of trial properly functions. *United States v. Cronic*, 466 U.S. 648, 656–57, 104 S.Ct. 2039, 2044–45, 80 L.Ed.2d 657 (1984). The record in this case indicates that Delap received effective assistance of counsel and the adversarial process was not impaired by the performance of his counsel.

Moreover, in light of the minimal nature of the alleged inconsistencies, and in light of the stronger weight that the jury must have placed on the confession, we are persuaded that Delap has failed to satisfy the prejudice prong of the *Strickland* test.

## V. *BRADY* CLAIM

Delap argues that the state suppressed evidence of a witness's involvement in drug smuggling in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). On November 2, 1981, a federal grand jury indicted Chief Investigator Lem Brumley for conspiracy to import marijuana from Colombia which allegedly began prior to October 1, 1977 and continued through July 31, 1981. Brumley agreed to plead guilty on October 29, 1981, and was sentenced to three years in prison and ordered to pay a $5,000 fine on February 23, 1982. Delap contends that because Brumley was a key witness and a member of the prosecution team, the state was under a duty to disclose Brumley's illegal activities.

To establish a *Brady* violation, Delap must demonstrate (1) that the prosecution suppressed evidence (2) that was favorable to him or exculpatory and (3) that the evidence was material. *United States v. Blasco*, 702 F.2d 1315, 1327 (11th Cir.), *cert. denied*, 464 U.S. 914, 104 S.Ct. 275 & 276, 78 L.Ed.2d 256 (1983). We need not address the first two prongs of this test,[16]

---

**15.** The trial judge at Delap's second trial specifically found that "the cross examination of Dr. Schofield was long and thorough." (A2–380).

**16.** Therefore, we assume *arguendo* but expressly do not decide that Brumley's knowledge of his own illegal activities, as a member of the prosecution team, was imputed to the prosecution.

because we conclude that the evidence was not material.

The purpose of the *Brady* rule is to ensure that a criminal defendant receives a fair trial. *United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976). *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), governs the standard of materiality to be applied in determining whether a conviction should be reversed because the prosecution failed to disclose requested evidence that could have been used to impeach government witnesses. The Court in *Bagley* held that such evidence

> is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

473 U.S. at 682, 105 S.Ct. at 3383.

While *Bagley* was decided in the context of a request for impeaching evidence, its materiality test is equally applicable to purely impeaching evidence that was not requested by the defense. *Id.* (test is "sufficiently flexible to cover the 'no request,' 'general request,' and 'specific request' cases of prosecutorial failure to disclose evidence favorable to the accused"); *see United States v. Severdija*, 790 F.2d 1556, 1560 (11th Cir.1986) (Court in *Bagley* "appears to have announced a single standard for materiality of nondisclosed evidence").

Our examination of the circumstances convinces us that the evidence concerning Brumley's involvement in drug smuggling activities was not material under the *Bagley* test. Delap argues that exposure of Brumley's illegal activities to the jury would have cast substantial doubt on his credibility. First of all, as the district court noted, it is highly questionable whether the evidence would have been ad-

missible under Florida law. Brumley had not been charged nor convicted of any crime during Delap's first or second trials. Brumley was not indicted until late 1981, well after Delap's October 1978 second trial. Therefore, his illegal activities would not be admissible as a prior criminal conviction under Fla.Stat. § 90.610. *See Rolle v. State*, 386 So.2d 3 (Fla. 3d Dist.Ct.App. 1980) (general rule is that witness may not be interrogated as to prior arrests or pending charges, but only as to prior convictions). Nor is it likely that the evidence would be admissible under Fla.Stat. § 90.608 as evidence of bias in this case, where no criminal proceeding or even an investigation had begun.

Second, like the district court, we believe that the result of the trial would have been the same regardless of whether Brumley's testimony was impeached. The physical evidence of Delap's guilt was strong, including but not limited to Delap's confession,[17] the blood on his shirt, the matching descriptions of Delap and the victim struggling in Delap's car, the medical testimony, and a shovel found after a search of Delap's car. This evidence was sufficiently powerful so that even had Brumley's testimony been impeached with evidence of drug dealing, there was not a reasonable probability that the outcome of Delap's trial would have been different.

Therefore, Delap's *Brady* claim must fail.

## VI. "NEWLY DISCOVERED EVIDENCE" CLAIM

Delap contends that the testimony of Dr. Hampton Schofield, Medical Examiner for the Nineteenth Judicial Circuit of Florida, who testified in Delap's case, was false and misleading. In support of his claim, Delap submitted an affidavit to the second Florida 3.850 court from Dr. Schofield's succes-

---

*See Freeman v. State of Georgia*, 599 F.2d 65 (5th Cir.1979), *cert. denied*, 444 U.S. 1013, 100 S.Ct. 661, 62 L.Ed.2d 641 (1980); *United States v. Antone*, 603 F.2d 566 (5th Cir.1979); *Schneider v. Estelle*, 552 F.2d 593 (5th Cir.1977); *United States v. Rosner*, 516 F.2d 269 (2d Cir.1975),

*cert. denied*, 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976).

17. Brumley was not the only officer present during Delap's interrogation. Therefore, even if Brumley were impeached, the other officers present could testify as to Delap's confession.

sor, Dr. Ronald L. Reeves, to the effect that Dr. Schofield's testimony rested on inadequate medical evidence.[18] (2SR1–13– Exhibit A). On October 12, 1987, the state court denied Delap's second motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. (2SR1– 14). The Supreme Court of Florida affirmed on the ground that the motion was procedurally barred because it was not filed by January 1, 1987, in accordance with the time limits of Rule 3.850, and Delap's claim did not fall within one of the exceptions to the time limit. *Delap v. State*, 513 So.2d 1050 (Fla.1987). The district court rejected Delap's argument on the ground that it was procedurally barred under Florida law and that Delap failed to satisfy the "cause" component of the "cause and prejudice" test of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). For the reasons set forth below, we affirm the district court on this issue.

█ Under *Sykes*, noncompliance with a state procedural rule generally precludes federal habeas corpus review of all claims as to which noncompliance with the procedural rule is an independent and adequate state law ground upon which to deny review. 433 U.S. at 81–86, 97 S.Ct. at 2503– 06; *see Booker v. Wainwright*, 764 F.2d 1371, 1379 (11th Cir.1985), *cert. denied*, 474 U.S. 975, 106 S.Ct. 339, 88 L.Ed.2d 324 (1985). A state procedural rule which bars presentation of a federal claim is not "independent and adequate" if the state applies the rule in a sporadic or surprisingly harsh manner. *Francois v. Wainwright*, 741 F.2d 1275, 1281 (11th Cir.1984); *see Dugger v. Adams*, — U.S. —, — n. 6, 109 S.Ct. 1211, 1217 n. 6, 103 L.Ed.2d 435 (1989). Delap argues that *State v. Sireci*, 502 So.2d 1221 (Fla.1987), demonstrates that the procedural bar imposed by the Florida courts has not been regularly applied in similar circumstances.

In *Sireci*, the Supreme Court of Florida upheld the trial court's granting of a limited evidentiary hearing on Sireci's second 3.850 motion. Sireci claimed that his due process rights were violated because two psychiatrists appointed before trial to evaluate his sanity failed to conduct competent and appropriate evaluations. A third psychiatrist examined Sireci during the pendency of the appeal from his first 3.850 motion and, unlike the first two psychiatrists, took into account Sireci's past medical history in concluding that Sireci suffered from organic brain damage and paranoid psychosis, conclusions vastly different from those reached by the previous psychiatrists. 502 So.2d at 1224. The court held that a new sentencing hearing was required under the unique facts of *Sireci*, a case where the prior psychiatric examinations were "so grossly insufficient that they ignore[d] clear indications of either mental retardation or organic brain damage." 502 So.2d at 1224; *see Mason v. State*, 489 So.2d 734 (Fla.1986). In Delap's case, Dr. Reeves' affidavit was critical of Dr. Schofield's methodology and questioned the medical basis for his conclusions, but Dr. Reeves himself could not have examined the victim. Any impeachment of Dr. Schofield's autopsy performance should—and more importantly *could*—have been conducted on cross-examination at trial. Delap presents no evidence to suggest that Dr. Schofield committed perjury. *Cf. State v. Crews*, 477 So.2d 984 (Fla.1985). Furthermore, even if Dr. Schofield's strangulation theory was discredited, there was evidence that Paula Etheridge was beaten to death, evidence that would also support a finding of premeditation.

█ The Florida courts consistently apply the rule that successive motions for post-conviction relief are denied "unless the movant alleges that the asserted grounds were not known and could not have been

---

**18.** In his capacity as Interim Medical Examiner for the Nineteenth Judicial Circuit, Dr. Reeves received a request for medical records of Paula Etheridge's death from Delap's counsel pursuant to the Florida Public Records Act. His review of the records caused him to contact Delap's counsel and submit an affidavit accompanying

Delap's second 3.850 motion which detailed his conclusion that Dr. Schofield's autopsy protocol was "striking[ly] and alarming[ly] deficient" and that his conclusion that the victim was strangled was "without any basis in fact." (2SR1–13–Exhibit A).

known to the movant at the time the initial motion was filed." *Christopher v. State*, 489 So.2d 22, 24 (Fla.1986). The Supreme Court of Florida found that Delap's case was such an instance. Therefore, we reject Delap's argument that *Sireci* mandates a finding that his claim is not procedurally barred under Florida law.

Under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), a federal habeas corpus court will excuse noncompliance with state procedural rules, however, upon a showing of cause excusing the default and prejudice resulting from the noncompliance. *See Francois v. Wainwright*, 741 F.2d 1275, 1283 (11th Cir. 1984). The district court found that Delap could not satisfy the "cause" prong of the *Sykes* test because the "new evidence" could have been ascertained prior to Delap's first 3.850 motion for post-conviction relief as well as before his second trial. Delap's second trial counsel, the district court found, was aware of and had access to the autopsy report prior to trial. Delap's first 3.850 motion also indicated that Delap's counsel was aware of possible inconsistencies and problems with Dr. Schofield's testimony. On appeal, Delap has not argued that he satisfied the "cause" prong of *Sykes*, and we therefore affirm the district court on this issue.

Instead of arguing that he had cause for his procedural default and suffered prejudice therefrom, Delap argues that he has demonstrated a "miscarriage of justice" sufficient to overcome the "cause and prejudice" test because Dr. Reeves' affidavit demonstrated that Dr. Schofield's testimony was false or misleading. In *Murray v. Carrier*, 477 U.S. 478, 495, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986), the Court stated that "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *See Smith v. Murray*, 477 U.S. 527, 537, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1986). Courts have been extremely reluctant to

find that this standard has been met, *see* 17A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 4266.1 at 467 (1988), and we do not believe that Delap has carried his burden of demonstrating that a miscarriage of justice has occurred by not allowing consideration of the Reeves affidavit. We therefore affirm the district court's holding that Delap's "newly discovered evidence" claim is procedurally barred under Florida law and that Delap has not shown the cause and prejudice or the miscarriage of justice required to overcome the procedural default.

## VII. *GARDNER* VIOLATION

■ The judge at Delap's second trial made an *ex parte* visit to death row while he was considering Delap's sentence. The only evidence of this visit in the record comes from the judge's comments at the February 16, 1979 sentencing hearing, where he stated that

[t]his trial was October 13th [1978], and that was almost four months and three days ago. The Court is aware of situations where judges immediately sentence the accused in many cases like this. I want to point out to you that during that four months, I have done a lot of thinking about this. I refuse to make any decisions until I have had an opportunity to find out all I could about the problem involved. *I even went out to Raiford and talked to some of the people that you might call cage mates. I saw the facilities. I sat in the electric chair. I saw the chairs that witnesses sit in.*

(A7–1336) (emphasis added). In his sentencing findings required by Florida law to impose the death penalty, the trial judge found as a nonstatutory mitigating factor Delap's acceptable behavior on death row, "as determined by the court's own personal investigation." (A14–2461).[19]

Delap argues that the judge's visit to death row violated the principle set forth in *Gardner v. Florida*, 430 U.S. 349, 362, 97 S.Ct. 1197, 1207, 51 L.Ed.2d 393 (1977), that

19. The judge also noted that "perhaps" Delap    had shown some remorse. (A14–2461).

a defendant in a capital case is denied due process of law when the death sentence is "imposed, at least in part, on the basis of information which he had no opportunity to deny or explain." Delap argues that he had no opportunity to rebut information extracted by the trial judge in his visit to death row, and that there was a substantial risk that any information obtained by the judge was erroneous. *See Gardner,* 430 U.S. at 359, 97 S.Ct. at 1205 ("The risk that some of the information accepted in confidence may be erroneous, or may be misinterpreted, by the investigator or by the sentencing judge, is manifest.").

The Florida Supreme Court found that the judge's actions violated *Gardner,* but that the visit did not affect Delap's "substantial rights," because the judge found only a nonstatutory mitigating factor which he considered in imposing sentence. *Delap v. State,* 440 So.2d 1242, 1257 (Fla. 1983), *cert. denied,* 467 U.S. 1264, 104 S.Ct. 3559, 82 L.Ed.2d 860 (1984). Similarly, the district court acknowledged that the trial judge considered information during sentencing that was not disclosed to Delap, but concluded that the judge did not impose the death penalty on the basis of the undisclosed information. Hence, the court below found no reversible *Gardner* error. District Court Order 40–41.[20]

The state argues that no *Gardner* violation occurred in Delap's case because "there is nothing confidential about death row." "Lawyers, judges and laypersons often go to Starke," the state maintains, "to educate themselves as to the facilities there." Brief for State of Florida at 33. This argument completely misses the point. Certainly attorneys and judges are free to visit prisons in order to make a general assessment of conditions; more should do so. Delap's objection to the judge's visit

rests on the fact that the judge obtained information about Delap's conduct in prison apparently by interviewing his cellmates and guards. The obtaining of such *ex parte* information violates the *Gardner* principle.

Several factors lead us to conclude, however, that any *Gardner* violation was harmless beyond a reasonable doubt under the circumstances of this case. First, it is clear from the record that the trial judge applied his observation of Delap and interviews with his cellmates only in Delap's favor. Second, under Florida law the sentencing judge may consider only the enumerated statutory aggravating factors in imposing the death penalty. Fla.Stat. § 921.141 (1977); *Proffitt v. Wainwright,* 685 F.2d 1227, 1266–67 (11th Cir.1982), *modified on other grounds,* 706 F.2d 311 (11th Cir.), *cert. denied,* 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 697 (1983). The trial judge's consideration of the statutory aggravating factors could not have been affected by anything the judge observed on his visit to death row, as all of the factors relate either to the crime itself or to the defendant's prior criminal record. *See* Fla. Stat. § 921.141(5)(a)—(h) (1977).

We emphasize that we need not and do not decide the question whether a *Gardner* violation could ever constitute harmless error in a situation where a court possibly could have relied on the information in imposing the death penalty. *See Harvard v. Florida,* 459 U.S. 1128, 1133, 103 S.Ct. 764, 767, 74 L.Ed.2d 979 (1983) (Marshall, J., dissenting from denial of certiorari). The structure of the Florida death penalty statute and the precise nature of the trial judge's findings in this case make it clear that he could not have relied upon information gleaned from his *ex parte* visit to death row in sentencing Delap to death.

---

**20.** The state contends that Delap is procedurally defaulted from raising the *Gardner* claim because Delap did not object at the time the trial judge announced that he had made his visit to death row. The state did not raise the issue of procedural default in its response to Delap's habeas petition, and thus has waived procedural default. *See* Response to Petition for Writ of Habeas Corpus 71–72 (October 1, 1987); *Pen-*

*nington v. Spears,* 779 F.2d 1505, 1506 (11th Cir.1986). Furthermore, the Florida Supreme Court ruled on the merits of the *Gardner* claim, thus making procedural default inapplicable under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). *County Court of Ulster County v. Allen,* 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979).

We find that any error was harmless beyond a reasonable doubt under the unique circumstances of this case.

## VIII. *HITCHCOCK* VIOLATION

Delap claims that the jury in the penalty phase of his second trial was improperly instructed to consider only statutory mitigating factors in violation of the Eighth and Fourteenth Amendments as set forth in *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and *Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987).

At the close of the sentencing phase of Delap's trial, the judge instructed the jury on its duty to render an advisory sentence based on whether sufficient aggravating circumstances existed to justify imposition of the death penalty and whether sufficient mitigating circumstances existed to outweigh any aggravating circumstances found to exist. (A7–1256). The court stated the statutory aggravating factors applicable to Delap's case. The court then instructed the jury on mitigating factors, stating that "[t]he mitigating circumstances which you may consider, if established by the evidence, are these," listing the statutory mitigating factors *seriatim.* The court later emphasized that "your verdict must be based on your finding of whether sufficient aggravating circumstances exist and whether sufficient mitigating circumstances exist which outweigh any aggravating circumstances found to exist." (A7–1256–60). The record indicates that before this instruction was read to the jury, Delap's attorney requested an additional instruction that would have allowed the jury to consider "[s]uch other mitigating circumstances as you may find to exist," because he believed that the instructions as read appeared "to limit the jurors to the enumerated mitigating circumstances." The trial judge denied the request, but at no time did the trial judge limit the quantity or type of mitigating evidence presented by the defense. (A7–1263–64). While the jury was deliberating, the judge sent a copy of the instructions to the jury, over defense counsel's objection, so the jury could "make absolutely sure of [its] decision." (A7–1265).

Delap presented his claim to the Supreme Court of Florida on direct appeal. The court rejected Delap's *Lockett* claim, noting that "[i]t does not appear that the trial judge precluded defendant from offering any evidence of non-statutory mitigation," and that "the standard jury instruction adequately covered the instructions on mitigating circumstances." *Delap v. State,* 440 So.2d 1242, 1254 (Fla.1983). The Supreme Court of Florida reconsidered Delap's claim in a petition for writ of habeas corpus after *Hitchcock* was decided. The court, over a dissenting opinion on the question of harmlessness, found that while the instruction violated the dictates of *Hitchcock,* any error was rendered harmless because the nonstatutory mitigating evidence was weak in comparison to the five statutory aggravating factors. *Delap v. Dugger,* 513 So.2d 659, 662 (Fla.1987). The district court in Delap's federal habeas petition initially found no *Hitchcock* violation. District Court Order 32–40. In an amended order, however, the district court found a violation and concluded that the *Hitchcock* error was not harmless beyond a reasonable doubt. District Court Amended Order 32–49. We affirm the holding of the district court on Delap's *Hitchcock* claim.

The district court noted, and we agree, that the jury instruction at issue in this case is almost identical to the instruction in *Hitchcock* itself. The instruction in *Hitchcock* began: "[t]he mitigating circumstances which you may consider shall be the following [listing statutory factors]." 481 U.S. at 398, 107 S.Ct. at 1824. In Delap's case, the sentencing judge instructed the jury as follows: "[t]he mitigating circumstances which you may consider, if established by the evidence are these: [listing statutory mitigating factors]." (A7–1256–60). This court has addressed many cases involving jury instructions virtually identical to the one in *Hitchcock,* and without exception we have found that the instructions violated *Hitchcock. See, e.g., Demps v. Dugger,* 874 F.2d 1385, 1389 (11th Cir. 1989); *Jones v. Dugger,* 867 F.2d 1277, 1279 (11th Cir.1989); *Clark v. Dugger,* 834

F.2d 1561, 1569 (11th Cir.1987), *cert. denied*, 485 U.S. 982, 108 S.Ct. 1282, 99 L.Ed.2d 493 (1988); *Messer v. State of Florida*, 834 F.2d 890, 894 (11th Cir.1987); *Armstrong v. Dugger*, 833 F.2d 1430, 1434 (11th Cir.1987); *Magill v. Dugger*, 824 F.2d 879, 893 (11th Cir.1987).

In judging whether a violation of *Hitchcock* occurred, however, the court must consider the totality of the circumstances. *Hargrave v. Dugger*, 832 F.2d 1528, 1535 (11th Cir.1987), *cert. denied*, —— U.S. ——, 109 S.Ct. 1353, 103 L.Ed.2d 821 (1989). The state's principal argument on the *Hitchcock* issue is that any error committed by the state trial court is harmless. The Supreme Court of Florida found the *Hitchcock* error harmless in this case on the grounds that the judge actually considered nonstatutory mitigating evidence in sentencing Delap to death, that the prosecutor told the jury that it was not limited to considering the statutory list of mitigating factors, and that the mitigating evidence was very weak when compared to the statutory aggravating factors. *Delap v. Dugger*, 513 So.2d 659, 661–63 (Fla.1987).

This court has applied a harmless error analysis to *Lockett* and *Hitchcock* violations. *See, e.g., Demps*, 874 F.2d at 1389–91; *Clark*, 834 F.2d at 1569–70; *Magill*, 824 F.2d at 893. The state first argues that the trial judge actually allowed the defense to present nonstatutory mitigating evidence. This argument ignores the fact that even if Delap's counsel actually presented nonstatutory mitigating evidence, such evidence would have no effect if the jury was instructed to consider evidence relating only to the statutory mitigating factors. This court consistently has so held. *See Jones*, 867 F.2d at 1280 ("because the jury recommendation resulted from an unconstitutional procedure, the entire sentencing process has necessarily been tainted [by the *Hitchcock* error]") (footnote omitted); *Armstrong*, 833 F.2d at

1436 ("the introduction of nonstatutory mitigating evidence is meaningless *if the jury is instructed not to consider that evidence*") (emphasis added); *Magill*, 824 F.2d at 893 ("[w]hether or not the trial court believed it could consider nonstatutory mitigating circumstances, [defendant's death] sentence must be vacated because the *jury* was led to believe its inquiry was so limited") (emphasis in original).

The state also argues that in Delap's case the prosecutor mentioned to the jury that it was not limited to statutory mitigating factors. Read in context, however, the thrust of the prosecutor's remarks was in the other direction, namely, that the jury could consider only the statutory factors in mitigation.[21] *Delap v. Dugger*, 513 So.2d 659, 663 (Fla.1987) (Barkett, J., dissenting). The prosecutor told the jury not to act out of any sympathy it may have had for Delap, but to "[b]ase it on the evidence that we have heard and on the guidelines that we have." (A7–1238). The prosecutor added that:

> Your advisory opinion now is to decide, as I say, not in a callous and indifferent way, but decide if the guidelines that we have given to us by our elected officials, by our State legislature, and the belief we have in the constitutionality of this provision which has been upheld by the Supreme Court of the United States and the Supreme Court of Florida, as to whether or not this is a circumstance and a type [of] case where we want to advise this Court to impose the death penalty.

The legislature is trying to help us take out emotional or sympathetic aspects and has set forth certain circumstances under which the death penalty should be considered. These are enumerated in the statute, and the Court will instruct you on them later. There are certain aggravating circumstances, some of which, or at least one of which, has to

---

**21.** Thus, we need not decide whether, under some circumstances, a prosecutor's remarks could cure an erroneous jury instruction, although we do note that throughout almost every criminal trial, including this one (A7–1236), the jury is instructed that it cannot rely on what attorneys say either as evidence or as a definitive statement of the law. Even if a prosecutor could correct an erroneous jury instruction, the comments relied upon by the state fall far short of correcting the constitutionally deficient instruction.

be there before you can advise the death penalty.

The Court will instruct you that you shall consider certain aggravating circumstances, and you are limited to it. If you feel that there are sufficient aggravating circumstances to where the death penalty should be recommended, the Court will instruct you that you should go on then and consider, and you may consider, *but you are not limited to considering*, certain mitigating circumstances which this Court will enumerate what the mitigating circumstances are. (A7–1238–39) (emphasis added). Immediately after his allusion to the fact that the jury could consider all mitigating evidence, the prosecutor stated that the "Court will enumerate what the mitigating circumstances are." (A7–1239). Later in his argument, the prosecutor discussed mitigation solely in terms of the statutory factors,[22] and in fact argued to the jury that it should not consider Delap's remorse or his mental or emotional disturbances in mitigation. The prosecutor in Delap's sentencing proceeding "discussed, one by one, the statutory mitigating circumstances, clearly implying to the jury that the statutory test was exclusive." *Messer v. State*

*of Florida*, 834 F.2d 890, 894 (11th Cir. 1987); (A7–1244–45). As the dissenting Justice in the Supreme Court of Florida's opinion noted, "the prosecutor's argument reinforced what the jury already had been told by the judge and defense counsel—listen to and follow the judge's instructions." *Delap v. Dugger*, 513 So.2d 659, 664 (Fla. 1987) (Barkett, J., dissenting).

We cannot conclude that the *Hitchcock* error in Delap's sentencing proceeding was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Knight v. Dugger*, 863 F.2d 705, 710 (11th Cir.1988); *Magill v. Dugger*, 824 F.2d 879, 893–95 (11th Cir.1987). There was substantial and significant psychological evidence which the jury, if it followed the court's instruction, would have considered only if it rose to the level of a statutory mitigating factor; i.e., only if the jury found that Delap committed the crime "under the influence of *extreme* mental or emotional disturbance." Fla.Stat. § 921.141(6)(b) (1977) (emphasis added). There is a likelihood that the jury found that this evidence did not rise to that threshold level. In fact, the state argues that the fact that the jury rejected Delap's psychological evidence as

**22.** The prosecutor's argument as to mitigating circumstances was as follows:

Mitigating circumstances. What are the mitigating circumstances? I submit to you there are none that apply in this case. Mr. Ferraro is going to argue that Mr. Delap was under extreme mental or emotional disturbances. You heard the psychiatric testimony. He was not under any extreme emotional or mental disturbances; that he was frustrated, and if he didn't get his way, he took his way. We don't condone that.

We do not deny the fact that he may have had some anxiety or emotional disturbance of some kind, but not to the extreme that it would cause the act, and then the fact you would come in and say that he had some emotional feelings at that time, therefore, he should not have to face up to the penalty.

I submit to you that if anybody can commit a crime in this State because of some emotional problem, I hope I am not normal. To commit a crime like this, I would hope that would be abnormal.

Did he appreciate the capacity of the criminality of his actions? All three of the psychiatrists said that he knew what he was doing.

He knew it was wrong. He knew he shouldn't do it. He could have stopped it if he wanted to. All of them said this man was frustrated. The defense says that because he didn't get his way, they want you to say that should be enough to create mitigating circumstances.

Also, there is one here about extreme duress. I submit that extreme duress is outside duress. The nearest that any psychiatrist came to saying anything about duress, Dr. Haber said he did have extreme inward stress. I submit to you anytime you commit a crime, there is some kind of stress on you. It is just not normal to do it.

What did the psychiatrists all say? He knew what he was doing. He had the capability. He was an intelligent man, above average intelligence. They all said that he was a man that knew what he was doing. He knew what was wrong. I think Dr. Gilbert said the man knew he had committed a crime. He knew he had done wrong. He knew he was guilty. He felt guilt feelings. He felt like that he should be punished by society by giving to society what he had taken away from it. That was Dr. Gilbert.

a statutory mitigating factor indicates that the jury rejected the evidence completely. We disagree. Had the jury been properly instructed, it may have considered the psychological evidence in mitigation even if it did not find that the evidence met the required threshold level for a statutory mitigating factor.

In this case, there was substantial nonstatutory mitigating evidence presented which could have led to a recommendation of a lesser sentence by the jury. This evidence included Delap's feelings of remorse (A7–1332–33); his capacity for rehabilitation (A6–1137); his demonstrated good behavior while in prison (A7–1336, A14–2461); as well as expert psychological testimony as to Delap's mental and emotional problems caused in part by organic brain syndrome (A6–1122–23, 1198). Furthermore, Delap cooperated with authorities after his arrest, he attended college, and was a father of young children. One or more of these factors could have caused a properly instructed jury to recommend life imprisonment. *See Caldwell v. Mississippi*, 472 U.S. 320, 330, 105 S.Ct. 2633, 2640, 86 L.Ed.2d 231 (1985); *Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976).[23]

(A7–1244–45).

23. The state also argues that there was "compelling evidence" of five aggravating circumstances in Delap's case, and that the nonstatutory mitigating evidence was weak. There is some disagreement in this circuit as to the proper role of the habeas court in weighing aggravating and mitigating evidence in a *Hitchcock* situation. *See Tafero v. Dugger*, 873 F.2d 249, 252 n. 5 (11th Cir.1989); *Demps v. Dugger*, 874 F.2d 1385 (11th Cir.1989) (Clark, J., specially concurring) (Johnson, J., concurring in part and dissenting in part); *Knight v. Dugger*, 863 F.2d 705 (11th Cir.1988) (Tjoflat, J., specially concurring) (Clark, J., specially concurring). We need not decide this question in this case, however, because the nonstatutory mitigating evidence was sufficient under any formulation of the harmless error standard this court has applied in *Hitchcock* cases to render the error not harmless.

We note that the aggravating factors in Delap's case, while present, were far from "compelling." The Supreme Court of Florida struck the "pecuniary gain" factor on direct appeal. *Delap v. State*, 440 So.2d 1242, 1257 (Fla.1983),

The record indicates that at least one juror voted for life imprisonment. (A7–1268). Whether other jurors voted for life is not known, but the totality of the circumstances indicates that the *Hitchcock* error in this case was not harmless beyond a reasonable doubt.

## IX. DOUBLE JEOPARDY/COLLATERAL ESTOPPEL ISSUE

In his petition for a writ of habeas corpus to the district court, Delap contended that his acquittal of felony murder at the guilt phase of his first trial served to bar the state from seeking a felony murder aggravating factor at the sentencing phase of his second trial. Although the jury was not instructed on felony murder at the guilt phase of Delap's second trial, the advisory sentencing jury was instructed over a defense objection to consider as an aggravating factor that the crime occurred in the course of the commission or attempt to commit "involuntary sexual battery, robbery or kidnapping." (A13–2197). In his order sentencing Delap to death, the sentencing judge found as an aggravating factor that the crime "was committed while the Defendant was engaged in the commission of a kidnapping, robbery and rape."

*cert. denied*, 467 U.S. 1264, 104 S.Ct. 3559, 82 L.Ed.2d 860 (1984). The "great risk of death to many persons" factor was highly speculative, *see supra* note 2, and the felony murder factor was constitutionally improper. *See infra* Part IX. The finding that the killing was extremely cruel, heinous, and atrocious and the finding that the crime was committed while Delap was under sentence of imprisonment have been upheld, but these two aggravating factors do not seem "compelling," contrary to the state's argument. This court has cast doubt upon the argument that a *Hitchcock* error may be deemed harmless because the aggravating factors are strong and a properly instructed jury would not have reached a different result. *Knight v. Dugger*, 863 F.2d 705, 710 (11th Cir.1988). We need not engage in a weighing of this evidence against the nonstatutory mitigating evidence, however, to conclude that the *Hitchcock* violation was not harmless. *Cf. Demps v. Dugger*, 874 F.2d 1385, 1394–96 (11th Cir.1989) (Clark, J., specially concurring). The presence of substantial nonstatutory mitigating evidence in this case alone is sufficient to render the *Hitchcock* error not harmless beyond a reasonable doubt.

(A14–2460–61). Delap claims that he was unconstitutionally subjected to double jeopardy because he was acquitted of felony murder at his first trial. He argues that it was error for the sentencing judge at his second trial to instruct the jury on felony murder and to find a felony murder aggravating factor. In its initial order of October 13, 1987, the district court agreed with Delap, *see* District Court Order 41–49, and the court adhered to and expanded its prior holding in an amended order of April 21, 1988. *See* District Court Amended Order 3–32. The state now appeals the district court's determination of this issue.[24]

In order to resolve this claim, we must address the district court's finding that Delap was acquitted of felony murder at his first trial. Because we conclude that the district court's finding that Delap was acquitted of felony murder at his first trial is not clearly erroneous, we then turn to the double jeopardy and collateral estoppel implications of that acquittal. For the reasons set forth below, we affirm the holding of the district court.

### A. Was Delap Acquitted of Felony Murder at His First Trial?

The initial question we must address in order to resolve this issue is whether Delap was in fact acquitted of felony murder at his first trial. We conclude that the district court's finding of fact that Delap was acquitted of felony murder at his first trial in 1976 is not clearly erroneous.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969), applied the Double Jeopardy Clause to state criminal proceedings through the Fourteenth Amendment. The Double Jeopardy Clause generally does not prohibit the state from reprosecuting a defendant who succeeds in getting his or

her conviction reversed on appeal. *Lockhart v. Nelson*, —— U.S. ——, ——, 109 S.Ct. 285, 289, 102 L.Ed.2d 265 (1988). However, a judgment of acquittal, whether based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict, may not be appealed and terminates the prosecution when a second trial would be necessitated by a reversal. *Smalis v. Pennsylvania*, 476 U.S. 140, 142, 106 S.Ct. 1745, 1747, 90 L.Ed.2d 116 (1986); *United States v. Scott*, 437 U.S. 82, 91, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65 (1978). The refusal to instruct a jury on an offense constitutes an implicit acquittal of that offense for double jeopardy purposes. *Saylor v. Cornelius*, 845 F.2d 1401, 1403–05 (6th Cir.1988). Similarly, the state may not retry a defendant when a reviewing court reverses a conviction on the ground that the evidence was insufficient to sustain the adverse verdict. *Burks v. United States*, 437 U.S. 1, 16, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978). The Double Jeopardy Clause compels this result because a reversal for insufficiency of the evidence is a determination that the government's case against the defendant was so lacking that the trial court should have entered a judgment of acquittal rather than submitted the case to the jury. *Lockhart*, —— U.S. at ——, 109 S.Ct. at 290.

The trial judge's characterization of his or her actions does not control whether there was an "acquittal" for double jeopardy purposes. *Scott*, 437 U.S. at 96, 98 S.Ct. at 2196–97. A court "must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 1354–55, 51 L.Ed.2d 642 (1977).

Determining whether Delap was in fact acquitted of felony murder at his first trial requires more detective work than usual, because the records of Delap's first trial

---

**24.** This claim was properly before the district court. The state has not claimed procedural default or failure to exhaust state law remedies on this issue. *See* District Court Amended Order 17 n. 16.

are woefully incomplete.[25] The initial indictment against Delap under Florida's first degree murder statute [26] contained a general charge of premeditated murder.[27] At a pretrial proceeding held on September 26, 1975, Delap's counsel moved to dismiss the indictment on the ground that the indictment did not sufficiently inform Delap of the actual offense; i.e., whether the state was pursuing a premeditated murder theory, a felony murder theory, or both. The state successfully argued to the trial judge that the Florida statute did not require the prosecution to specify whether it was pursuing premeditated murder, felony murder, or both. (A19–3349–50).[28]

The state proceeded at Delap's first trial under both felony murder and premeditated murder theories. At the close of the state's case on the third day of trial, January 7, 1976, Delap's counsel moved for judgment of acquittal on the grounds that there was insufficient evidence to convict Delap of either premeditated murder or felony murder.[29] The focus of both the prosecutor's and defense counsel's argument was on the issue of premeditation,[30]

**25.** Delap's first conviction was reversed by the Supreme Court of Florida because the state could not provide a complete transcript for appellate review. *Delap v. State*, 350 So.2d 462, 463 (Fla.1977).

**26.** The Florida first degree murder statute in effect at the time Delap was charged provided:
(1)(a) The unlawful killing of a human being, when perpetrated from a premeditated design to effect the death of the person killed or any human being, or when committed by a person engaged in the perpetration of, or in the attempt to perpetrate, any ... involuntary sexual battery, robbery, ... [or] kidnapping ... shall be murder in the first degree and shall constitute a capital felony, punishable as provided in § 775.082.
Fla.Stat. § 782.04 (1976).

**27.** The indictment read as follows:
David Ross Delap, late of the County of Okeechobee aforesaid, in the Circuit and State aforesaid, David Ross Delap on the 30th day of June, in the year of Our Lord one thousand nine hundred and seventy-five with force and arms, at and in the County of Okeechobee aforesaid David Ross Delap did unlawfully and feloniously from a premeated [sic] design to effect the death of Paula Etheridge, a human being, did kill and murder her, the said Paula Etheridge, by inflicting wounds and injuries in a manner, means, or by an instrumentallity [sic] unknown to the Grand Jury at this time, from which said wounds and injuries the Paula Etheridge did languish and die; against the form of the Statute in such case made and provided, to the evil example of all others in like cases offending and against the peace and dignity of the State of Florida.
(A16–2634).

**28.** Under Florida law it is permissible for the prosecution to proceed on either a felony murder or premeditated murder theory when the indictment charges only the offense of first degree murder or premeditated murder. *Knight v. State*, 338 So.2d 201, 204 (Fla.1976). *See Lightbourne v. State*, 438 So.2d 380, 384 (Fla.

1983) ("first-degree murder may be committed in several ways, including murder by premeditated design or a felony murder supported by various felonies.... The single offense of first-degree murder may be proven by alternate methods, so it follows that the charging instrument should be free to include such alternate bases for conviction."), *cert. denied*, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984).

**29.** Delap's counsel argued as follows:
MR. SCHWARZ: Your honor, at this time the Defendant respectfully move [sic] for a judgment of acquittal as far as the charges, murder in the first degree is concerned on the basis that by the testimony of Mr. Arnold, there is nothing within which the felony of murder could apply....
The case law cited reflect [sic] kidnapping and false imprisonment and it must also be shown to exist with the additional ingredient, purposely holding a victim for ransom, to be paid for the release of such person. There is absolutely no testimony of any rape, robbery, the money is still in the purse. Therefore, that would not be applicable.
Therefore, the only conceivable could be premeditated. There is absolutely no evidence here of premeditated design to kill anyone. If it is anything, the only intent that has been shown is the intent to possibly commit a battery....
There is certainly no evidence that he intended to cause her death, it shows that he was trying to prevent her from resisting, fighting, trying to jump out which might possibly have gotten her injured. We submit there is no evidence sufficient to go to a jury on a crime of murder in the first degree.
(A18–3073–74, 3077).

**30.** For example, the prosecutor argued in response to Delap's motion that
First of all, it is clear from the charges that this was a premeditated murder and I think it is charged in the indictment in the manner provided either premeditated murder or felony murder which, in this case, takes place of having to prove premeditation....

and the ruling of the trial court reflects that focus:

> THE COURT: Based on your judgment of acquittal, the only thing I am required to determine is if there is sufficient evidence from which the jury can lawfully reach a verdict of guilty and the Court is of the opinion that there is sufficient evidence on the basis of premeditation. That there is evidence that could be construed by the Jury to show that the defendant intended to either, from the beginning or at some point during the drive, that he intended to actually effect her death.
>
> The Court will deny the motion.

(A18–3083). Thus, as the district court noted, the trial judge had not ruled that there was insufficient evidence of felony murder at this point; he merely ruled that there was sufficient evidence of premeditated murder for the state's case to proceed. District Court Amended Order 8–9.

Delap renewed his motion for judgment of acquittal of first degree murder at the close of all the evidence. (A19–3332). Again, the argument focused on premeditation, but the prosecutor brought up felony murder:

> MR. KOBLEGARD: . . . I think the jury is to decide this premeditated killing. It is certainly sufficient evidence to go to the Jury on a first degree murder charge. I don't think the Court ruled out a felony murder, I believe the Court merely stated that the Court found there was evidence enough to go to the Jury on a question of premeditation. . . .

(A19–3334). The trial judge then denied the motion on the same grounds he had expressed earlier:

> THE COURT: I don't believe the Court ruled a felony murder yesterday, either I said that it was one charge or one count and that alone was evidence. On that

basis, that would be proper to deny the motion. That is the extent to which my ruling went yesterday.

> As far as premeditation, of course, that is beside the total of the evidence. Even Doctor Haber's statement a few minutes ago didn't rule out what has been reflected in the last few moments. Counsel is familiar with the charge on premeditated design.
>
> But, it will be read to the Jury. The law doesn't fix the exact period of time which must be passed between the point of intent to kill and carry out the intent. Maybe it is only a short time.
>
> It is not my function to weigh the evidence, it is the duty for the Jury. I think the evidence is sufficient for them on this basis, this definition of premeditated design to find if there was one.
>
> So, the Court will deny the motion.

(A19–3334–35).[31]

Unfortunately, the opening and closing arguments of counsel, voir dire of the jury, the transcript of the jury charge conference, and the jury instructions in both the guilt and penalty phases of Delap's first trial are not in the record. *Delap v. State*, 350 So.2d 462, 463 (Fla.1977). These parts of the record have been irretrievably lost for some unknown reason. *See Delap*, 350 So.2d at 463 (quoting trial judge's June 11, 1977 order, in which he stated that "it is impossible to reconstruct said portions of the record by stipulation or otherwise and that there appears to be no means of completing the requested record"). The record in the district court contains affidavits to this effect (R5–38–1–4), and also contains a stipulation that Judge C. Pfeiffer Trowbridge has no notes or independent recollection of Delap's first trial. (R5–46–1).

The jury, of course, found Delap guilty of first degree murder. (A19–3339–40). Neither the verdict (A16–2644, A19–3339–

---

As to the felony murder, we submit that the evidence shows that the man put a knife to her throat or to her back, depending upon which version you consider, Mr. Brumley's or Mr. Arnold's, he intended to take her with him and later killed her when she was struggling with him trying to cry out. (A18–3078–80).

**31.** After the trial and sentencing, Delap's counsel filed assignments of error with the trial court. Assignment of error number three asserted that "[t]he Court erred in denying defendant's Motion for Judgment of Acquittal made at the close of the State's case and renewed again at the close of all evidence." (A20–3387, A11–1892, A16–2652).

40) nor the judgment entered by the court (A11–1882, A16–2646) specified whether Delap was found guilty of premeditated murder, felony murder, or both. The documents state only that Delap was found guilty of first degree murder.

The records of Delap's first trial which survive include the written order setting forth the findings of the trial judge in support of his imposition of the death penalty. Judge Trowbridge stated that:

(d) 'The capital felony was committed while the defendant was engaged * * * in the commission of, or an attempt to commit, or flight after committing or attempting to commit, any robbery, rape, kidnapping * * * *.' *Although the Court found the evidence at trial insufficient to support a felony murder basis for conviction,* an inference can be made from defendant's conduct that such a crime was a motive for his actions toward the victim.

(A11–1886, A16–2648) (emphasis added). This statement strongly suggests that Delap was acquitted of felony murder. As the district court noted, "insufficient" evidence is a legal term of art, indicating that there was no evidence which would enable a reasonable jury to find the defendant guilty. District Court Amended Order 11; *Tibbs v. State,* 397 So.2d 1120, 1123 (Fla. 1981) ("In the criminal law, a finding that the evidence is legally insufficient means that the prosecution has failed to prove the defendant's guilt beyond a reasonable doubt."), *aff'd,* 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

The district court found that had this been the only evidence on this question, it

could not have concluded that Delap had been acquitted of felony murder. District Court Amended Order 11–12. The district court also found, however, that the complete record of Delap's second trial shed considerable light on what actually happened at the first trial. At the outset of Delap's second trial, Delap's counsel (who had also represented him at his first trial) filed a motion in limine seeking to forbid all reference or argument on the felony murder doctrine on double jeopardy grounds. (A1–16). In support of the motion, counsel cited the finding of aggravating circumstances by the first trial judge quoted above and then went on to argue that:

The written jury instructions must be filed in every death penalty case. If the Court will look at those written jury instructions, I think that is [sic] filed somewhere in your case file. I think that you will find that there are no instructions, no standard jury instructions, on the felony murder rule.

(A1–18).[32] The district court attached considerable significance to the fact that in its response, the prosecutor did not challenge defense counsel's statement that a felony murder instruction was not given, but instead argued that what happened at the first trial was irrelevant. District Court Amended Order 14 (A1–19). Judge Philip G. Nourse, who presided over Delap's second trial, ordered counsel not to use the words "felony murder" in their arguments, but deferred ruling on the substance of Delap's motion. (A1–25).

While the state relied on the original indictment in Delap's second trial, the second trial proceeded only on a premeditated murder theory. Premeditated murder was

---

**32.** A few moments later, Delap's counsel reiterated his argument:

Now, a circuit judge [Trowbridge] decided that they took both shots, the felony murder rule or premeditation and only the premeditation could go forward. I submit that it was an acquittal to the felony murder doctrine.

I apologize if I inadvertently referred to the transcript. I believe my comments were that we can't refer to the transcript because it is so fraught with inaccuracies. That is why I am citing to the Court the findings of fact in support of sentence filed in this cause by Judge C. Pfeiffer Trowbridge, a Circuit Court

Judge on February 27, 1976, a copy of which if not in·the Court file is attached to my motion, a certified copy no less. This is what I am referring to the Court.

I am also referring to the Court the written jury instructions, not the ones transcribed by the Court reporter, but the ones that C. Pfeiffer Trowbridge read to the jury which are stapled together and handed to the clerk and as by law, what is read, has to be filed.

I submit to you in both instances that there is evidence that he has been acquitted on the basis of the felony murder.

(A1–22–23).

the theory of the case discussed in the state's opening and closing arguments. (A2–326–33, A5–954–1000, A6–1001–12). At the close of the evidence, the state voluntarily withdrew its request for a felony murder instruction (A5–903), which the prosecutor later stated was a rare occurrence. (R5–44–11–12).

The district court also noted that deposition testimony of the attorneys who handled Delap's first trial indicated that Delap was acquitted of felony murder. Both of Delap's attorneys clearly recalled that at the close of the state's evidence, the trial judge ruled there was insufficient evidence of felony murder. (R5–42–4–6, R5–43–7). The attorneys for the state did not clearly remember whether Judge Trowbridge granted Delap's motion for an acquittal as to felony murder. (R5–44–6, R5–45–22). Various photocopies of notes and proposed jury instructions also are in the record, but were not helpful to the district court. District Court Amended Order 16.

*Alvord v. Wainwright*, 731 F.2d 1486, 1488 (11th Cir.), *cert. denied*, 469 U.S. 956, 105 S.Ct. 355, 83 L.Ed.2d 291 (1984), mandates that the petitioner in a habeas case bears the burden of establishing his right to relief by a preponderance of the evidence. The district court concluded that Delap demonstrated by a preponderance of the evidence that he was acquitted of felony murder in his first trial and that the trial judge did not instruct the jury on felony murder. District Court Amended Order 16. The state has pointed to nothing in the record that suggests the district court erred.

The state first argues that Judge Trowbridge's reference to felony murder in his findings at Delap's first capital sentencing proceeding, where he stated that "[a]lthough the Court found the evidence at trial insufficient to support a felony

murder basis for conviction, an inference can be made from defendant's conduct that such a crime was a motive for his actions toward the victim," was merely the judge's personal comment on the evidence, and not a legal ruling. A trial judge's statement regarding his or her perception of the facts, which does not actually resolve any factual elements of the offense, is not an acquittal and has no double jeopardy effect. *Leary v. United States*, 544 F.2d 1266, 1270 (5th Cir.1977). We, like the district court, reject the state's contention here—Judge Trowbridge's use of the term "insufficient" strongly implies a legal conclusion. *Tibbs v. State*, 397 So.2d 1120, 1123 (Fla.1981). Furthermore, there is no indication that the *jury* ever found Delap guilty of felony murder in his first trial; Judge Trowbridge did not instruct the jury on felony murder. In light of all the evidence of acquittal of felony murder discussed above, we believe that the record does not support the state's interpretation of Judge Trowbridge's statement.

The state next argues that the Supreme Court of Florida made a factual finding that Delap was not acquitted of felony murder and that the district court erred in not according this alleged finding a presumption of correctness. *See* 28 U.S.C. § 2254(d)(1). Delap raised his double jeopardy argument on direct appeal, and the Supreme Court of Florida adopted the state's position that Delap was not acquitted of the death sentence. The court stated that "the defendant here was not acquitted of whatever was necessary to impose the death sentence at his first trial and sentencing hearing," *Delap v. State*, 440 So.2d 1242, 1255–56 (Fla.1983), *cert. denied*, 467 U.S. 1264, 104 S.Ct. 3559, 82 L.Ed.2d 860 (1984), and concluded that *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981),[33] did not

---

**33.** *Bullington* held that the state of Missouri could not again seek the death penalty against a defendant who received a term of life imprisonment at a first trial. The jury's decision to sentence the defendant to life was treated as an "acquittal" of the death penalty under Missouri law, because the sentencing procedure offered only the two alternatives, life imprisonment or

death. 451 U.S. at 444–45, 101 S.Ct. at 1861. *See Arizona v. Rumsey*, 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984); *Young v. Kemp*, 760 F.2d 1097 (11th Cir.1985), *cert. denied*, 476 U.S. 1123, 106 S.Ct. 1991, 90 L.Ed.2d 672 (1986); *Green v. Zant*, 738 F.2d 1529, 1540–41 (11th Cir.), *cert. denied*, 469 U.S. 1098, 105 S.Ct. 607, 83 L.Ed.2d 716 (1984). The *Bullington* Court

prevent reimposition of the death penalty. Therefore, whether Delap was acquitted of felony murder was irrelevant to the Supreme Court of Florida's conclusion, because the court focused on the fact that Delap was sentenced to death at his first trial. The district court was correct when it concluded that the merits of the factual dispute were not resolved by the state court, at least not resolved in the state's favor. District Court Amended Order 16. Contrary to the state's contention that the Supreme Court of Florida found that Delap was not acquitted of felony murder, however, the court apparently found that the first trial judge *did* acquit Delap of felony murder. The Supreme Court of Florida stated: "At defendant's first trial, the trial judge 'found the evidence at trial insufficient to support a felony murder basis for conviction.'" *Delap v. State*, 440 So.2d at 1255.[34] After careful review, we conclude that the district court's conclusion that Delap was acquitted of felony murder is supported by the record and is not clearly erroneous.[35] We now turn to the double jeopardy and collateral estoppel consequences at Delap's second trial and capital sentencing proceeding of his acquittal of felony murder at his first trial.

### B. *Double Jeopardy Implications*

■ The state contends that the general rule applies in this case—i.e., that the Double Jeopardy Clause does not prevent the government from retrying a defendant who succeeds in setting aside his first conviction because of an error in the proceed-

ings leading to the first conviction. *Lockhart v. Nelson*, ── U.S. ──, ──, 109 S.Ct. 285, 289, 102 L.Ed.2d 265 (1988); *United States v. Tateo*, 377 U.S. 463, 465, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964); *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). The state may retry a defendant after a successful appeal because "the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean." *North Carolina v. Pearce*, 395 U.S. 711, 721, 89 S.Ct. 2072, 2078, 23 L.Ed.2d 656 (1969). The state argues that because Delap's "slate" was "wiped clean" by the Supreme Court of Florida on direct appeal of his first conviction, *see Delap v. State*, 350 So.2d 462 (Fla.1977), there was no impediment to the trial court's reimposition of the death penalty, and no significance should be attributed to the events that occurred at the first trial.

The state's "clean slate" argument ignores the fact that the first trial judge found the evidence insufficient to sustain a felony murder instruction. The acquittal of Delap of felony murder at his first trial "actually represent[ed] a resolution, correct or not, of some or all of the factual elements of the offense charged." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977). Firmly established double jeopardy principles hold that a finding of insufficiency of the evidence renders the "clean slate" argument inapplicable. As the Court emphasized in *Bullington*, "the 'clean slate' rationale recognized in *Pearce* is inapplicable whenever a jury

---

did not address the issue of the manner in which individual aggravating and mitigating circumstances should be treated at a later sentencing proceeding when the original sentencing resulted in imposition of the death penalty. *See Knapp v. Cardwell*, 667 F.2d 1253, 1264–65 (9th Cir.), *cert. denied*, 459 U.S. 1055, 103 S.Ct. 473, 74 L.Ed.2d 621 (1982).

**34.** If this statement by the Supreme Court of Florida may be considered a finding of fact, then it is entitled to the § 2254(d) presumption of correctness. *Sumner v. Mata*, 449 U.S. 539, 546–47, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981) (findings by state appellate courts entitled to same presumption of correctness as findings by state trial courts). We need not decide whether

the Supreme Court of Florida found that Delap was acquitted of felony murder at his first trial, however, because we reach the same result in our conclusion that the district court was not clearly erroneous in making the same finding that Delap was acquitted of felony murder.

**35.** We assume *arguendo* that the district court's finding that Delap was acquitted of felony murder at his first trial is a question of fact, to which the clearly erroneous standard of review applies. *See Wainwright v. Goode*, 464 U.S. 78, 83–86, 104 S.Ct. 378, 382, 78 L.Ed.2d 187 (1983). Even if it were not a question of fact, however, our independent review of the record leads us to the same conclusion as the district court, as discussed in the text.

agrees or an appellate court decides that the prosecution has not proved its case." 451 U.S. at 443, 101 S.Ct. at 1860. The finding of insufficient evidence was an acquittal of felony murder, and could not have been appealed.[36]

The Seventh Circuit was presented with a closely analogous situation in *Wilson v. Meyer*, 665 F.2d 118 (7th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 855 (1982). In *Wilson*, the defendant was tried and convicted of separate counts of intent murder, felony murder, and attempted burglary.[37] Under Illinois law, intent murder and felony murder constituted alternative bases for a murder conviction, but "murder" was a single offense under state law. 665 F.2d at 119 n. 1, 121. Before sentencing, the state *nolle prossed* the felony murder count. The conviction was later overturned on federal habeas corpus review. The defendant was indicted again for intent murder and felony murder and was found guilty by a general verdict. The defendant brought a second petition for writ of habeas corpus. The Seventh Circuit, rejecting a "clean slate" argument

remarkably similar to the one the state presents in this case, held that the retrial for felony murder violated the Double Jeopardy Clause. *Id.* at 125. *Wilson* stands for the proposition that even where state law defines murder as a single offense, including premeditated murder and felony murder, acquittal of felony murder bars later reprosecution for that felony murder. *See also Commonwealth v. Fickett*, 403 Mass. 194, 526 N.E.2d 1064 (1988); *Huffington v. State of Maryland*, 302 Md. 184, 486 A.2d 200 (1985).

The Supreme Court in *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), was presented with a situation analogous to this case. There, defendant was charged under a first degree murder statute of killing another during commission of arson, which was a felony murder offense. The jury was instructed that it could find defendant guilty of felony murder or of a lesser included offense of killing another with malice aforethought. The jury verdict found defendant guilty of the lesser included offense. The Supreme Court held that the jury had implicitly acquitted the defendant of the

**36.** The state argues that, because premeditated murder and felony murder are both enumerated in the same Florida first degree murder statute, an acquittal on either premeditated murder or felony murder should not bar subsequent reprosecution on either or both theories. Like the district court, we reject the state's argument. It is clear that if premeditated murder and felony murder are separate offenses for double jeopardy purposes under the test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) ("The test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."); Fla.Stat. § 775.021(4) (codifying *Blockburger* test); then Delap's acquittal of felony murder would be entitled to full double jeopardy effect, and would bar any retrial for felony murder.

The state, however, argues that premeditated murder and felony murder are the same offense for double jeopardy purposes. Even if this were the case, the acquittal on felony murder would invoke double jeopardy and bar any subsequent reprosecution for felony murder. Double jeopardy applies even though only one offense is involved. For example, when a defendant is charged with first degree murder, but only convicted of the lesser included offense of second degree murder, the double jeopardy clause for-

bids retrial on the greater offense. This is so because the defendant "was forced to run the gantlet once on that charge and the jury refused to convict him." *Green v. United States*, 355 U.S. 184, 190, 78 S.Ct. 221, 225, 2 L.Ed.2d 199 (1957). *See Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970); *Greene v. City of Gulfport*, 103 So.2d 115, 116 (Fla.1958). Double jeopardy operates even though the greater offense and the lesser included offense constitute but one offense for double jeopardy purposes.

Thus, whether felony murder and premeditated murder are the same offense, or are separate offenses, for double jeopardy purposes, the first trial judge's finding of insufficient evidence of felony murder triggered application of double jeopardy principles and barred any subsequent retrial for felony murder.

**37.** We, like the district court, do not think that the fact that intent murder and felony murder were charged in separate counts in *Wilson* meaningfully distinguishes that case from the present case. District Court Amended Order 22 n. 21. *See Green v. United States*, 355 U.S. 184, 190 n. 10, 78 S.Ct. 221, 225 n. 10, 2 L.Ed.2d 199 (1957) ("The constitutional issues at stake here should not turn on the fact that both offenses were charged to the jury under one count.").

greater offense, felony murder, and that double jeopardy barred any reprosecution for felony murder on remand after the appellate court had reversed the conviction of the lesser offense for trial error.

When Delap was acquitted of felony murder at the first trial, that acquittal did not bar his second conviction for premeditated murder. However, the finding that there was insufficient evidence of felony murder constituted an acquittal of felony murder, barred any appeal of that acquittal, and barred any further prosecution for that felony murder. *Smalis v. Pennsylvania*, 476 U.S. 140, 142, 106 S.Ct. 1745, 1747, 90 L.Ed.2d 116 (1986) (judgment that evidence is legally insufficient to sustain a guilty verdict constituted an acquittal for double jeopardy purposes); *Burks v. United States*, 437 U.S. 1, 15–17, 98 S.Ct. 2141, 2149–50, 57 L.Ed.2d 1 (1978). The state certainly was aware of this when it voluntarily withdrew its proposed felony murder instruction at Delap's second trial. Delap's successful appeal of his first conviction "wiped the slate clean" as to the premeditated murder theory, but did nothing to disturb his acquittal of felony murder.

Having concluded that Delap was acquitted of felony murder and could not have been reprosecuted therefor, we now turn to the effect of this conclusion on the capital sentencing phase of Delap's second trial.

### C. *Collateral Estoppel Effect of Prior Acquittal at Second Sentencing.*

■ The issue which we now address is whether Delap's acquittal of felony murder at the guilt phase of his first trial serves, through collateral estoppel principles, to bar a finding that the murder occurred during the commission of a felony so as to constitute an aggravating factor justifying imposition of the death penalty.[38]

In *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the Su-

preme Court held that the Double Jeopardy Clause of the fifth amendment encompasses the doctrine of collateral estoppel. *Ashe* established that collateral estoppel in the criminal context "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." 397 U.S. at 443, 90 S.Ct. at 1194; *see Ferenc v. Dugger*, 867 F.2d 1301, 1303 (11th Cir.1989). This court has emphasized that *Ashe* requires that a defendant not be forced to defend against charges or factual allegations which he overcame in an earlier trial. *Albert v. Montgomery*, 732 F.2d 865, 869 (11th Cir.1984); *United States v. Mock*, 604 F.2d 341, 343–44 (5th Cir.1979).

In order to successfully invoke collateral estoppel, a party must demonstrate: (1) that the issue in question was actually raised and litigated in the prior proceeding; (2) that the determination was a critical and necessary part of the final judgment in the earlier litigation; and (3) that the issue in the later proceeding is the same as that involved in the prior action. *Deweese v. Town of Palm Beach*, 688 F.2d 731, 733 (11th Cir.1982); 1B J. Moore, J. Lucas, T. Currier, *Moore's Federal Practice* ¶ 0.443[1] at 759 (1988). Collateral estoppel applies to "ultimate" as well as "evidentiary" facts. *Johnson v. Estelle*, 506 F.2d 347, 349 (5th Cir.), *cert. denied*, 422 U.S. 1024, 95 S.Ct. 2619, 45 L.Ed.2d 682 (1975); *Wingate v. Wainwright*, 464 F.2d 209, 213 (5th Cir.1972). In most cases where criminal defendants seek to invoke collateral estoppel, it is difficult to determine precisely what facts and issues were conclusively determined in the prior proceeding. Project, *Seventeenth Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1986–87*, 76 Geo.L.J. 521, 914 (1988). In such cases, courts have often stated that

---

**38.** In his findings required by Florida law in order to impose the death penalty, *see* Fla.Stat. § 921.141(3) (1977), the judge at Delap's second trial found as an aggravating circumstance that "(d) The capital felony was committed while the Defendant was engaged in the commission of a kidnapping, robbery, and rape." (A14–2460).

Had Delap been *convicted* of felony murder at his first trial, there would be no impediment to a finding of a felony murder aggravating factor at sentencing. *Lowenfield v. Phelps*, 484 U.S. 231, 242–43, 108 S.Ct. 546, 553–54, 98 L.Ed.2d 568 (1988); *Parker v. Dugger*, 537 So.2d 969, 973 (Fla.1988).

collateral estoppel requires the court in a subsequent trial to examine the pleadings, evidence, jury charge and other relevant material in the record of the first trial to determine whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. *Ashe*, 397 U.S. at 444, 90 S.Ct. at 1194; *United States v. Giarratano*, 622 F.2d 153, 155 n. 3 (5th Cir.1980); *United States v. Gonzalez*, 548 F.2d 1185, 1191 (5th Cir.1977). In this case, however, there was not a general verdict of acquittal that would make it difficult to determine precisely on what grounds the evidence against Delap was found to be insufficient; here there was a finding by the first trial judge that the evidence of felony murder was insufficient to convict on that theory.

The state makes no argument that the elements of collateral estoppel are not present in this case. We conclude that the first two factors are easily satisfied here. There is no question that the issue of felony murder was actually litigated in the first trial, and that the judgment of acquittal of felony murder was final. As the district court noted, "the judgment of acquittal completely removed felony murder as a theory from the case, and that ruling *could not* be appealed." District Court Amended Order 18–19 (emphasis in original). *See State v. Brown*, 330 So.2d 535, 536 (Fla.1976). The acquittal of felony murder was essential to the prior proceeding; while Delap was still found guilty of first degree murder, his guilt was based only on premeditated murder and not felony murder. *Cf. United States v. Hogue*, 812 F.2d 1568, 1578 (11th Cir.1987).

The only aspect of collateral estoppel which requires extended discussion is whether the issue Delap seeks to foreclose,

application of the felony murder aggravating factor in Florida's death penalty statute, is identical to the felony murder offense under Florida law. We conclude that the felony murder aggravating circumstance is coextensive with a felony murder theory of prosecution. The felony murder statute, Fla.Stat. § 782.04 (1976), provides in relevant part that murder is "[t]he unlawful killing of a human being, ... when committed by a person engaged in the perpetration of, or in the attempt to perpetrate, any involuntary sexual battery, robbery, ... [or] kidnapping." The relevant portion of Florida's capital sentencing statute provides that one aggravating circumstance to be considered in determining whether to impose the death penalty is whether "[t]he capital felony was committed while the defendant was engaged, or was an accomplice, in the commission of, or an attempt to commit, or flight after committing or attempting to commit, any robbery, rape, ... or kidnapping." Fla.Stat. § 921.141(5)(d) (1977).[39] The plain meaning of the two statutory provisions makes it clear that the issue is the same.

The state argues first that the standard of proof is different, i.e., that the felony aggravating factor need not be proved beyond a reasonable doubt. However, Florida law is absolutely clear that each aggravating circumstance in § 921.141 must be proved beyond a reasonable doubt. *Ford v. Strickland*, 696 F.2d 804, 819 (11th Cir.), *cert. denied*, 464 U.S. 865, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983); *Jent v. State*, 408 So.2d 1024, 1032 (Fla.1981), *cert. denied*, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982); *State v. Dixon*, 283 So.2d 1, 9 (Fla. 1973), *cert. denied*, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974).[40]

The state also argues that under the Florida death penalty statute, the felony murder aggravating factor can be found

---

**39.** Both the murder statute, Fla.Stat. § 782.04, and the capital sentencing statute, Fla.Stat. § 921.141, list other felonies. The only offenses relevant in this case are rape (or involuntary sexual battery), robbery, and kidnapping.

**40.** *See Bullington*, 451 U.S. at 438, 101 S.Ct. at 1858 (factors supporting Missouri death sentence must be proven beyond a reasonable

doubt); *cf. United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984) (gun owner's acquittal on criminal firearm charges does not preclude a subsequent *in rem* forfeiture proceeding against those firearms because, *inter alia*, burdens of proof are different).

not only for the commission of a murder in the course of a felony, but also when a murder is committed in the course of an attempted felony or flight after commission of an enumerated felony. The state argues that the ability to find the felony murder aggravating factor for attempt or flight, in addition to the actual commission of the felony, makes the aggravating factor easier to prove than actual felony murder. This argument has no merit. The Florida murder statute specifically provides that felony murder may be found both when the enumerated felony is attempted or actually committed. Fla.Stat. § 782.04 (1976) provides that a person who kills while "engaged in the perpetration of, or in the attempt to perpetrate," any of the enumerated felonies is guilty of felony murder. The state conceded at oral argument that flight from the commission of a felony, one of circumstances in which the aggravating factor can be found, is not at issue in this case.[41]

Having concluded that the felony murder aggravating circumstance in this case presents the same issue, in the collateral estoppel sense, as the felony murder of which Delap was acquitted at his first trial, we turn finally to the question of whether the *Ashe* principle properly extends to the sentencing phase of a capital trial. As the Court in *Ashe* emphasized, "the rule of collateral estoppel in criminal cases is not

to be applied with the hypertechnical and archaic approach of a 19th Century pleading book, but with realism and rationality." 397 U.S. at 443–44, 90 S.Ct. at 1194. The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Sealfon v. United States*, 332 U.S. 575, 579, 68 S.Ct. 237, 240, 92 L.Ed. 180 (1948). *See United States v. Larkin*, 605 F.2d 1360, 1369 (5th Cir.1979) ("[c]ollateral estoppel does not have the surgical precision found in double jeopardy, for its basics are founded in equity and therefore command some flexibility"). Under the circumstances of this case, we conclude that the *Ashe* principle of collateral estoppel should be applied to Delap's death sentencing phase. *See Tucker v. Kemp*, 762 F.2d 1480, 1487 (11th Cir. 1985) (en banc), *vacated on other grounds*, 474 U.S. 1001, 106 S.Ct. 517, 88 L.Ed.2d 452 (1985). Thus, where a defendant has been acquitted of felony murder because there was insufficient evidence that he committed the felony, and where double jeopardy principles bar any subsequent prosecution for that felony murder, the defendant cannot then be charged in a Florida death sentence proceeding with the aggravating circumstance that the killing occurred while the defendant was engaged in committing the same felony for which he was acquitted.[42]

---

**41.** In any event, a defendant who kills while fleeing from the commission of a felony can be convicted of felony murder. *See State v. Hacker*, 510 So.2d 304 (Fla. 4th Dist.Ct.App.1986) (prima facie case of first degree felony murder established where suspects fleeing robbery scene were involved in fatal car accident); *Campbell v. State*, 227 So.2d 873, 878 (Fla.1969) (fleeing felon who killed police officer properly found guilty of first degree felony murder), *cert. dismissed*, 400 U.S. 801, 91 S.Ct. 7, 27 L.Ed.2d 33 (1970).

At oral argument for the first time, the state advanced the argument that the sentencing judge at Delap's second trial found that kidnapping, rape, and robbery could have been a motive for the murder, and that such a finding would be sufficient to support the aggravating factor under Florida law. The state does not cite any authority for the proposition that the trial judge may properly find as an aggravating factor that the alleged felonies were a "motive" for the murder. To the contrary, the Florida statute defines the aggravating circumstance to

be that the capital felony was committed "while the defendant was engaged ... in the commission of" the felony, not that the felony was a motive. Moreover, there was error in any event when the judge charged the sentencing jury that they could find the felony murder aggravating circumstance.

**42.** We need not decide the precise extent to which collateral estoppel applies in the sentencing phase. Here, we hold only that a defendant cannot be sentenced to death on the basis of an aggravating circumstance which must be proven beyond a reasonable doubt and which is coextensive with a felony of which the defendant has been acquitted.

For example, we expressly do not hold that any particular facts (e.g., Delap's transportation of the victim in his car) underlying Delap's felony murder prosecution will be inadmissible in a subsequent resentencing proceeding. Delap has not pointed to any specific facts that were necessarily decided in his favor by his

The Court in *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), emphasized that the Missouri capital sentencing procedure, which is similar to Florida's in most material respects, "resembled and, indeed, in all relevant aspects was like the immediately preceding trial on the issue of guilt or innocence." 451 U.S. at 439, 101 S.Ct. at 1858. Like Missouri's, the Florida capital sentencing procedure has "the hallmarks of the trial on guilt or innocence." *Id. Bullington* has extended the protections of the Double Jeopardy Clause to the sentencing phase of a capital trial. The reasons underlying that action indicate that collateral estoppel, which is encompassed by the Double Jeopardy Clause, *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), should also be extended to the sentencing phase of a capital trial. We conclude that this is appropriate, at least to the extent that we so hold today—i.e., where a defendant has been acquitted of felony murder because of insufficient evidence in the guilt/innocence phase of a previous trial, he may not be charged in the sentencing phase with the aggravating circumstance that the killing occurred during the commission of the felony for which the defendant was acquitted.

We believe that our position is supported by the values underlying the Double Jeopardy Clause. Well-established double jeopardy principles hold that Delap could not be charged again and convicted for the offense of felony murder on which he was acquitted by the first trial judge. The values underlying this double jeopardy principle were stated by Justice Black in *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957), and quoted by the Court in *Bullington,* 451 U.S. at 445, 101 S.Ct. at 1861:

The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continual state of anxiety and insecurity.

For the reasons stated by Justice Black, Delap cannot be charged again and convicted of this felony murder. For the same reasons, we conclude that he should not be sentenced to death on the basis of a felony murder for which he has been acquitted.

In addition to double jeopardy and collateral estoppel principles, Eighth Amendment values support our decision. This case is analogous to *Johnson v. Mississippi,* 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988). There, a 1982 Mississippi death sentence was based in part on the aggravating circumstance that Johnson had been convicted in 1963 of a felony in New York. Following the Mississippi sentence, Johnson collaterally attacked the prior conviction in New York and succeeded in having the conviction vacated. The Supreme Court held that the Mississippi death sentence had to be reexamined. Like the similar situation in *Johnson,* we conclude that Eighth Amendment values—i.e., the need for reliability and the need to reduce the risk that a death sentence will be imposed arbitrarily—are implicated when a death sentence is based in part on the commission of a felony of which the defendant has been acquitted.

We have carefully examined *Poland v. Arizona,* 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986), and conclude that it

acquittal of felony murder. *Cf., e.g., United States v. DeMarco,* 791 F.2d 833, 836 (11th Cir. 1986) (government may not use evidence of conspiracy after acquittal of conspiracy in a subsequent retrial for substantive offense); *United States v. Whitaker,* 702 F.2d 901, 903–04 (11th Cir.1983) (specific testimony suppressed on collateral estoppel grounds). Therefore, as of now he has not met his burden of establishing that any particular facts sought to be foreclosed were necessarily determined in his favor at the first trial. *United States v. Boldin,* 818

F.2d 771, 775 (11th Cir.1987); *United States v. Hogue,* 812 F.2d 1568, 1578 (11th Cir.1987).

We hold only that the underlying facts may not be used to charge Delap with the felony murder aggravating circumstance, because he has already been acquitted of that felony murder. *See Johnson v. Mississippi,* 486 U.S. 578, ——, 108 S.Ct. 1981, 1986, 100 L.Ed.2d 575 (1988), where the Court noted that the prosecution introduced a disputed 1963 judgment of conviction of a New York charge and not any evidence concerning the alleged assault itself.

does not address this collateral estoppel question. That case deals with the question whether the state would be barred from seeking the death penalty at all in a resentencing, not whether the state would be barred by collateral estoppel from relitigating an issue already decided against the state. *See Godfrey v. Kemp*, 836 F.2d 1557, 1565–68 (11th Cir.1988); *Davis v. Kemp*, 829 F.2d 1522, 1533 (11th Cir.1987), *cert. denied*, 485 U.S. 929, 108 S.Ct. 1099, 99 L.Ed.2d 262 (1988).

In *Poland*, the defendants were convicted of first degree murder. At the capital sentencing proceeding, the prosecution sought the death penalty based on two statutory aggravating factors: that the defendants committed the offense in consideration for something of pecuniary value and that the offense was especially heinous, cruel, or depraved. The trial court found that the "heinous, cruel, or depraved" factor was present, but that the "pecuniary value" factor only applied to killings for hire and therefore did not apply. 476 U.S. at 149, 106 S.Ct. at 1752. On appeal, the Arizona Supreme Court held that the evidence was insufficient to sustain the "heinous, cruel, or depraved" aggravating circumstance and that the "pecuniary value" aggravating circumstance was not limited to cases involving a contract killing. On retrial, defendants were again found guilty of first degree murder and were sentenced to death, this time on the basis of the "heinous, cruel, or depraved" and "pecuniary value" aggravating factors (one of the defendants was also found to have a previous conviction for a violent felony, another aggravating factor). The defendants ar-

gued that the Arizona Supreme Court's finding that the evidence was insufficient to support the "heinous, cruel, or depraved" aggravating factor amounted to an "acquittal" of the death penalty within the meaning of *Bullington*. The Supreme Court rejected this contention, concluding that because defendants were never "acquitted" of the death penalty, there was no bar to resentencing them to death. The Court rejected what it called the "fundamental premise of petitioners' argument, namely, that a capital sentencer's failure to find a particular aggravating circumstance alleged by the prosecution always constitutes an 'acquittal' of that circumstance for double jeopardy purposes." 476 U.S. at 155, 106 S.Ct. at 1755.

The defendants in *Poland* did not contend that the "acquittal" on the "heinous, cruel, or depraved" aggravating circumstance would collaterally estop the state from relying on that factor at the second sentencing. That argument was not available to the defendants in the Supreme Court, because the Arizona Supreme Court had held in the second appeal that the evidence of that aggravating circumstance was again insufficient. *See Arizona v. Poland*, 144 Ariz. 388, 698 P.2d 183 (1985).

Furthermore, in this case Delap's acquittal of felony murder occurred during the *guilt/innocence* phase of his first trial. Thus, we need not address what collateral estoppel effect, if any, would result had the jury at the sentencing phase of Delap's first trial concluded that he had not committed murder during the course of a felony.[43] Here, we have a conclusive and final

---

**43.** In several cases, courts have refused to apply collateral estoppel to mitigating or aggravating factors in a capital sentencing proceeding. In these cases, however, courts concluded that collateral estoppel was inapplicable because the sentencer did not affirmatively find that a mitigating or aggravating factor did not exist; therefore, there was not a valid and final determination that the defendant sought to collaterally estop the state from prosecuting. *See, e.g., Padgett v. Texas*, 717 S.W.2d 55 (Tex.Crim.App. 1986) (en banc) (jury's inability to answer special interrogatory in first trial on whether defendant posed a continuing threat to society did not bar imposition of death penalty in trial for second killing arising out of same incident); *Johnson v. Maryland*, 303 Md. 487, 495 A.2d 1 (1985)

(sentencing judge at first trial found three mitigating factors, collateral estoppel does not require finding of same three factors at trial for separate killing because no identity of issues present), *cert. denied*, 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986); *Illinois v. Hipkins*, 97 Ill.App.3d 174, 53 Ill.Dec. 16, 423 N.E.2d 208 (1981) (jury could not find that aggravating factor existed; *held* trial court's consideration of factor at sentencing permissible). While the foregoing cases suggest that collateral estoppel principles should apply to findings made during a death sentencing phase, *see also Durosko v. Lewis*, 882 F.2d 357 (9th Cir.1989); *Briggs v. Procunier*, 764 F.2d 368, 371 (5th Cir.1985) (applying double jeopardy to findings made during

judgment in the *guilt/innocence* phase that Delap was not guilty of felony murder. Therefore, the concern of the *Poland* Court that capital sentencing proceedings would be transformed into "minitrials" on each aggravating and mitigating factor, 476 U.S. at 156, 106 S.Ct. at 1755, simply is irrelevant to this case, because the acquittal in question took place at the guilt/innocence phase of his first trial.

### D. *Harmless Error*

The state's final argument [44] is that any error committed by the consideration of the felony murder aggravating circumstance was harmless. We need not address the state's harmless error argument because we have already concluded that the *Hitchcock* error which occurred was not harmless beyond a reasonable doubt and thus a new sentencing proceeding will be required in any event.

### X. CONCLUSION

To summarize, we affirm the district court's denial of relief with respect to Delap's conviction. Thus, we reject Delap's claims that his *Miranda* rights were violated (Part II), that his confession was obtained through coercion (Part III), that he was denied effective assistance of counsel (Part IV), that the state improperly suppressed impeachment evidence (Part V), and that newly discovered evidence cast doubt on the medical evidence used to convict Delap (Part VI).

We reject Delap's claim that his sentence was tainted by *Gardner* error (Part VII); on this issue, we affirm on harmless error grounds the district court's denial of relief. We also affirm the district court's grant of habeas corpus relief with respect to Delap's sentence. We reject the state of Flor-

ida's arguments that the district court erred in granting relief based on a violation of *Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). *See supra* Part VIII. We also reject the state's argument that the district court erred in applying collateral estoppel principles to prevent the state from seeking a felony murder aggravating factor at Delap's second sentencing after Delap was acquitted of felony murder at his first trial. *See supra* Part IX.

Accordingly, the judgment of the district court is

AFFIRMED.

sentencing phase under habitual offender statutes), we need not consider that issue here.

**44.** In its reply brief, the state cites *Lockhart v. Nelson,* —— U.S. ——, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988), for the proposition that the case "may indicate a lessening of double jeopardy safeguards." *Lockhart* held that the Double Jeopardy Clause does not preclude a retrial when a reviewing court reverses a defendant's conviction because evidence was erroneously admitted and also concludes that without the

inadmissible evidence there was insufficient evidence to convict the defendant. Rather than indicating a "lessening" of the requirements of the double jeopardy rule, we think *Lockhart* requires courts to apply a more functional analysis to the Double Jeopardy Clause, *see* —— U.S. at ——, 109 S.Ct. at 291 ("[p]ermitting retrial in this instance is not the sort of governmental oppression at which the Double Jeopardy Clause is aimed"), which is precisely the approach we have attempted to take in this case.